879 S.W.2d 395 (1994)
S.S., a Child, Appellant,
v.
STATE of Texas, Appellee.
No. 11-93-134-CV.
Court of Appeals of Texas, Eastland.
June 30, 1994.
Rehearing Denied July 28, 1994.
John Alan Goren, Dallas, for appellant.
John C. Vance, Dist. Atty., April E. Smith, Asst. Dist. Atty., Dallas, for appellee.

OPINION
DICKENSON, Justice.
The jury found that S.S., a child, engaged in two acts of delinquent conduct. The child, his parents, and their attorney then elected to waive the jury and have the juvenile court judge determine the punishment. The trial court placed the child on "intensive supervision probation" for a period of one year.[1]

Background Facts
On June 2, 1992, S.S. was 15 years of age, and he was the babysitter for two 5-year-old twin boys. One of the twins told his grandmother that S.S. "put his mouth on my weenie." The grandmother told the twins to tell their mother and father what happened, and they reported the matter to the police. One of the police officers arranged for a polygraph examination of S.S.
After the polygraph examiner told S.S. that he had not passed the polygraph examination, S.S. admitted to the police officer who was in charge of the investigation that "it happened." S.S. testified outside the presence of the jury as to violations of his right to counsel and of his right to remain silent, and he said that the admission was not true. The *396 police officer also testified outside the presence of the jury, and he said:
Q: After the polygraph examination was over, did you have a chance to speak with [appellant]?
A: Yes, I did.
Q: And how did you approach him?
A: He had spoken to [the polygraph examiner] at the end of the test, and at that point he knew that he had flunked the polygraph exam, and he told [the polygraph examiner] that he wanted to talk to me about that, and so when I went and sat down to talk to him I said, I understand that you have some things that you want to talk to me about, and he said, "Well, yes. I did it."
And so at that point I advised him of his rights as a juvenile under the family code.
Q: And at that point, after you read him his rights, did he say anything again?
A: Yes. He said, after he had been advised of his rights, that he had done the offense, that he had placed his mouth on the penis of both boys.
Q: Did he say why he did it?
A: He said he really didn't know why he did it. It's just something that he did on the spur of the moment.
On cross-examination, the police officer admitted that appellant was crying when he made the admissions and that the police officer did not secure permission from appellant's parents (who were waiting in the next room) or from their attorney before questioning appellant. The police officer also testified:
Q: And isn't it true that you told [the mother of the twins] that the reason you took this oral statement was so that [appellant] couldn't take the stand and say anything contrary to that?
A: That's correct.
Q: And that you knew ahead of time if you could get [appellant] to make an oral statement, that he then couldn't take the stand.
A: Right.
Q: And that that was the reason for you doing this?
A: Right.
Appellant did not testify at the adjudication hearing because of the trial court's ruling that he could be impeached by his oral confession if he testified that he never admitted the offense. The jury sent a note indicating some concern about the testimony of the twin boys, and the docket sheet shows that the jury deliberated from 1:05 p.m. until 9:35 p.m. before reaching a verdict.

Points of Error
Appellant argues in five points of error that the trial court erred: (1) in allowing the testimony of Blanche B____, the grandmother of the twin boys, because the State failed to disclose her address and telephone number in response to interrogatories and because no good cause was shown for the State's failure to timely supplement its discovery responses; (2) in allowing the testimony of the "outcry witness" because the trial court incorrectly interpreted TEX.FAM. CODE ANN. § 54.031 (Vernon 1986) as permitting such testimony despite the fact that her address and telephone number had not been furnished in the State's response to interrogatories; (3) in failing to have the court reporter record the jury arguments as required by TEX.FAM.CODE ANN. § 54.09 (Vernon 1986); (4) in overruling in part appellant's motion to suppress the oral confession which was inadmissible for any purpose under TEX.FAM.CODE ANN. § 54.03(e) (Vernon 1986); and (5) in rendering judgment that appellant had engaged in delinquent conduct because the evidence was legally and factually insufficient to support the jury's answer to Question No. 1.
We overrule Point 5, but we sustain Point 3. Our ruling on Point 3 is dispositive of the appeal; consequently, we need not discuss Points 1, 2, and 4.

Sufficiency of Evidence
The testimony of the two 5-year-old twin boys is sufficient to support the jury's finding that appellant engaged in delinquent conduct by placing his mouth on their sexual organs. See TEX.PENAL CODE ANN. §§ 22.011 and 22.021 (Vernon 1989 & Supp. 1994).
*397 The evidence which supports the jury's answer to Question No. 1 (in which the jury found that on or about June 2, 1992, S.S. intentionally caused the sexual organ of Bri__ B____, a child, to penetrate the mouth of S.S.) includes testimony from that child in which he stated:
Q: What did [appellant] do?
A: He put his lips on it.
Q: He put his lips on it? When you say he put his lips on it, are you talking about your private part?
A: Yes.
Q: Okay. Did you feel [appellant] do that to you?
A: Yes. I could feel it.
Q: Okay. Could you see it?
A: No.
Q: Okay. Why couldn't you see it?
A: Because he put my shirt over my head.
Q: Okay. Are you sure it was his mouth on your private?
A: Yes.
This child's testimony was corroborated by testimony from his grandmother, the outcry witness under Section 54.031. She testified that he told her that: "[Appellant] put his mouth on my weenie." The fifth point of error is overruled.[2]

Failure to Record Jury Argument
Appellant argues in his third point of error that the trial court erred "in failing to have the court reporter record the entire proceedings." Section 54.09 of the Family Code states:

All judicial proceedings under this chapter except detention hearings shall be recorded by stenographic notes or by electronic, mechanical, or other appropriate means. Upon request of any party, a detention hearing shall be recorded. (Emphasis added)
The statement of facts on the adjudication hearing contains the following notation after the objections to the charge:
(Whereupon closing arguments were heard, the jury charge was read, and the jury retired to deliberate)
The transcript contains a letter from appellant's counsel to the official court reporter which contains the following request:
Please prepare a complete Statement of Facts, including all pretrial rulings prior to the trial commencing as well as rulings during the trial and closing argument and copies of any documents offered or admitted into evidence. However, voir dire need not be included. (Emphasis added)
We need not rely upon the statement in appellant's brief that his attorney was informed by the court reporter that:
[T]he closing argument was not recorded due to the trial court's policy not to have them recorded unless requested to do so.
The statute requires that "all judicial proceedings" related to the adjudication and disposition hearings on juveniles "shall be recorded." There is no showing that the minor waived his right to have these proceedings recorded. See TEX.FAM.CODE ANN. § 51.09(a) (Vernon 1986). Since the court reporter was not able to furnish the oral arguments, appellant is entitled to a new trial on the adjudication proceedings. The error prevented appellant from making a proper presentation of the case. See TEX.R.APP.P. 81(b)(1). The third point of error is sustained.
The judgment of the trial court is reversed, and the cause is remanded.
NOTES
[1] The conditions of probation required appellant: to stay away from the two little boys that the jury found he had molested; to participate in family therapy and sex offender counseling; to not do any more babysitting; and to follow all of the "Offenders Rules for Living at Home."
[2] We note that there is no challenge to the jury's answer to Question No. 2 (in which the jury found that on or about June 2, 1992, S.S. intentionally caused the sexual organ of Bro__ B____, a child, to penetrate the mouth of S.S.). This finding is sufficient to support the trial court's judgment that appellant had engaged in delinquent conduct.