**In the Matter of G.M.P.**

No. 14–94–00549–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 21, 1995.

Randy Schaffer, Houston, for appellants.

Alan Curry, Houston, for appellees.

Before MURPHY, C.J., and YATES and FOWLER, JJ.

## OPINION

FOWLER, Justice.

Our original opinion in this case is withdrawn and this one substituted for it.

This is an appeal from an adjudication of juvenile delinquency for the offense of aggravated sexual assault. Appellant brings seven points of error, asking us to consider whether the evidence is sufficient to sustain the jury's verdict, whether the trial court erred in its rulings on several evidentiary matters, and whether trial counsel rendered ineffective assistance. Because the trial court's errors in the evidentiary rulings probably caused the rendition of an improper verdict, we reverse and dismiss the case for the juvenile court no longer has jurisdiction to hold an adjudication hearing.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, appellant, G.M.P., contends that the adjudication of delinquency is "contrary to the great weight and preponderance of the evidence." The State first argues that appellant had to file a motion for new trial challenging the factual sufficiency of the evidence in order to bring such a complaint on appeal. *See In re M.R.,* 858 S.W.2d 365, 366 (Tex.1993). Appellant did so, thus preserving his complaint for appellate review.

Turning to appellant's point of error, we are faced initially with the question of what standard of review is appropriate in a juvenile adjudication proceeding when reviewing the sufficiency of the evidence. The legislature has deemed that a juvenile adjudication proceeding is primarily civil in nature, although certain aspects of an adjudication proceeding are criminal in nature. *Vasquez v. State,* 739 S.W.2d 37, 42 (Tex.Crim.App. 1987); *Robinson v. State,* 707 S.W.2d 47, 48–49 (Tex.Crim.App.1986); *In re J.R.R.,* 696 S.W.2d 382, 383 (Tex.1985). For example, because an adjudication of delinquency may result in the juvenile's being deprived of liberty, the juvenile is entitled to certain constitutional protections, as he would be in a criminal trial. *Id.* (holding a juvenile is afforded protection from double jeopardy). *See also* TEX.FAM.CODE ANN. § 51.09 (Vernon Supp.1995) (providing that the statement of a juvenile is admissible only when a magistrate has informed him of his constitutional rights); TEX.FAM.CODE ANN. §§ 51.10, 56.01 (Vernon 1986 & Supp.1995) (providing that a juvenile has the right to an attorney, and to have one appointed for him if his family is indigent). *Cf. In re D.Z.,* 869 S.W.2d 561, 566 (Tex. App.—Corpus Christi 1993, writ denied) (stating an order of adjudication is not a conviction of a crime).

The legislature has also mandated that in a juvenile adjudication proceeding the juvenile is presumed innocent unless the State proves its case beyond a reasonable doubt. TEX.FAM.CODE ANN. § 54.03(f) (Vernon 1986). Thus, although the Texas Rules

of Civil Procedure govern juvenile adjudication proceedings, Tex.Fam.Code Ann. § 51.17 (Vernon 1986), and the requirements governing appeals are as in civil cases generally, Tex.Fam.Code Ann. § 56.01(b) (Vernon 1986), because of the quasi-criminal nature of the proceedings, some appellate courts have applied the standard of review utilized in criminal cases, as articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See In re P.L.W.*, 851 S.W.2d 383 (Tex.App.—San Antonio 1993, no writ). This inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App. 1993).

■ Other courts, however, articulate the standard that in juvenile cases, we must view the evidence as a whole to determine whether the State met its burden of proof beyond a reasonable doubt. *See In re M.R.*, 846 S.W.2d 97, 101 (Tex.App.—Fort Worth 1992), *writ denied per curiam*, 858 S.W.2d 365 (Tex.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994); *In re S.D.W.*, 811 S.W.2d 739, 749 (Tex.App.—Houston [1st Dist.] 1991, no writ); *In re H.R.A.*, 790 S.W.2d 102, 103 (Tex.App.—Beaumont 1990, no writ); *In re D.L.K.*, 690 S.W.2d 654, 655 (Tex.App.—Eastland 1985, no writ); *In re P.A.S.*, 566 S.W.2d 14, 16 (Tex.Civ.App.—Amarillo 1978, no writ). We choose to follow this second line of cases.

The afternoon of Monday, January 18, 1993, A.B.[1] picked up K.B., her ten-year-old son, also the complainant in this case, at the home of a friend. The friend's mother, Mrs. J., told A.B. she was concerned that appellant had behaved inappropriately toward her sons and toward K.B. Appellant is a neighbor of the Bs. and Js., and was sixteen years old at the time of the incident. On the way home, A.B. initiated a discussion with K.B. about inappropriate touching in private areas, and asked him if anyone had ever touched him that way. He denied it at first, but when his mother persisted because she sensed he was not telling the truth, he said that appellant had touched him that way. Later, K.B. told his mother that appellant had licked his rectum, tried to penetrate his rectum with his penis and finger, sucked K.B.'s penis, and wanted K.B. to suck his penis. K.B. said that appellant had promised him $1000 and an arcade game if he would let appellant do those things and not tell anyone. A.B. called the police, who advised her to take K.B. to a hospital for a rape examination. She and K.B.'s father took K.B. to a hospital, but after waiting six hours without being seen, went home and took K.B. to their family doctor the next day. The doctor found no evidence of trauma associated with sexual assault.

A.B. tried to find out when the sexual assault occurred, but K.B. was unsure about the exact date. At first, on that Monday, he said it happened "yesterday," but A.B. knew it could not have happened then because K.B. was with her on Sunday. Eventually, the Bs. narrowed it down to a two to three day time span, with Friday, January 15th the most likely day, as K.B. was out of school and home that day. A.B. testified that although K.B. is a fifth-grader of above average intelligence, he has trouble distinguishing the days of the week. A.B. also testified that K.B. had lied about appellant before: he had falsely accused appellant of running over his foot with a four wheel motorcycle.

K.B. testified that the incident happened "Friday, January 13th—15th." He was off school because of the Martin Luther King holiday, and went to appellant's house with B.J.,[2] a friend. Appellant said "I guess I'll see you later" to B.J., and B.J. left. K.B. and appellant went to appellant's room. K.B. said appellant's room was on the ground

---

1. The family code mandates that neither a child nor his family shall be identified in matters related to juvenile court proceedings. Tex.Fam.Code Ann. § 56.01 (Vernon 1986). Because of the nature of the allegations in this case, we will identify all of the families involved by their initials to maintain their privacy.

2. B.J. is the son of Mrs. J., who first alerted A.B. that something inappropriate may have happened.

floor, and contained a couch, a bed, a coffee table, and a television hooked up to stereo speakers. The two boys watched television at first, and then appellant told K.B. to go behind the couch and pull down his pants. Appellant then initiated sexual contact with K.B. During the encounter, K.B. said he saw a clock in the room which showed the time was 3:12, and he told appellant he had to go home. Appellant promised K.B. $1000 and a video arcade game, and told him not to tell anyone. K.B. later told his brother he was going to get a video arcade game, although he did not tell him why. On Monday night, K.B. told his mom what happened.

The investigating police officer, Detective Alphonso Amato, testified that after interviewing K.B., he concluded the incident occurred on January 15th.

In his defense, Appellant presented evidence from several witnesses, including his family, friends, and employers, that on Friday, January 15th, he was occupied for the entire day and could not have been home at the time K.B. said the incident happened. Appellant testified on his own behalf that he was away from home the entire day on January 15th from seven in the morning to seven at night, and that he did not have sexual contact with K.B. or offer him money or an arcade game.

In addition, R.P., appellant's father, testified that appellant's room did not contain a coffee table or a clock, as described by K.B. The defense also put on the testimony of K.B.'s family doctor, who stated that he examined K.B. on the 21st of January and found no bruising, tearing, abrasions, or abnormal tenderness, which are usually associated with sexual assault.

In rebuttal, the State first called Mrs. J., who testified that on Monday, January 18th, appellant was at her house with K.B. and her sons, B.J. and H.J. A prior incident with one of her sons had made Mrs. J. uneasy about appellant, and she felt concerned when she saw K.B. sitting on appellant's lap while they were watching television. She also testified that appellant gave her sons a video arcade game sometime in January.

The State then called H.J. to testify about the prior incident referred to by his mother. Appellant was a friend of H.J.'s older brother, B.J. One night appellant was spending the night at the Js.' house, and was sleeping on the floor in B.J.'s room with H.J., and H.J.'s twin brother K.J. H.J. testified that in the night, appellant touched him on the knee and asked if he could touch him somewhere else (H.J. said appellant wanted to touch his "private parts"). Appellant said he would give H.J. things so he would not tell anyone. H.J. refused to let appellant touch him, and got into bed with his brother B.J. Appellant later gave the boys an arcade game.

 Resolving conflicts and contradictions in the evidence is left for the trier of fact. *Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App.1986); *Walker v. State,* 846 S.W.2d 379, 383 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). *See also Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 866 (Tex. 1982). The jury is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Soto v. State,* 864 S.W.2d 687, 691 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). The jury is free to believe some witnesses and refuse to believe others, and it may accept some portions of testimony and reject other portions. *Losada,* 721 S.W.2d at 309; *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *Dade v. State,* 848 S.W.2d 830, 832 (Tex.App.—Houston [14th Dist.] 1993, no pet.). Thus, as the reviewing court, we do not act as a thirteenth juror reevaluating the weight and credibility of the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Blankenship v. State,* 780 S.W.2d 198, 206–07 (Tex.Crim.App.1988).

 Appellant argues first that the testimony of K.B., the complainant, was impeached and that the jury obviously did not believe him, as it acquitted appellant of three

of the four charges.[3] However, the trier of fact determines the probative force of particular evidence. *Fernandez v. State,* 805 S.W.2d 451, 456 (Tex.Crim.App.1991). Once the trier of fact has made its decision, the appellate court does not have the power to step in and reevaluate the probity of evidence in its review of the sufficiency of the evidence. *Id.* The jury evidently believed that the incident happened, but did not consider that the State had sufficiently proved all of the allegations of all of the paragraphs as charged in the petition.

K.B. unequivocally testified several times that appellant actually put his mouth on K.B.'s penis. However, his testimony concerning the other alleged acts was equivocal. K.B. testified that although appellant tried to put his penis in K.B.'s mouth, K.B. did not open his mouth, and appellant could not complete the act. Further, although K.B. testified on direct examination that appellant's penis penetrated his anus, on cross examination, he stated that appellant tried to penetrate him, but stopped when K.B. told him to stop. K.B. also testified that he could not remember whether appellant contacted his anus with his tongue. Thus, the jury could easily have concluded that appellant attempted to perform the acts alleged in the first three paragraphs, but failed, and therefore, the State failed to prove the charges in those paragraphs.

▬▬▬▬ Appellant also argues that the most important issue was the date of the incident, because appellant presented alibi testimony for Friday, January 15th, the date alleged in the petition. However, the State is not bound by the date alleged in an indictment. *Scoggan v. State,* 799 S.W.2d 679, 680 n. 3 (Tex.Crim.App.1990); *Weisinger v. State,* 775 S.W.2d 424, 429 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). The State may prove that the offense was committed before, on, or after the alleged date, provided the date proved is a date prior to the date of the indictment, and is within the statute of limitations. *Scoggan,* 799 S.W.2d at 680 n. 4;

*Williams v. State,* 565 S.W.2d 63, 64 (Tex. Crim.App.1978); *Weisinger,* 775 S.W.2d at 429. Simply because there were some contradictions in K.B.'s story does not render the evidence insufficient; contradictions only go to the weight and credibility of the evidence. *Id.* Appellant presented alibi testimony for Friday, January 15th, but the jury evidently chose to believe that appellant sexually assaulted K.B. "on or about" January 15th, within the two to three day time period discussed by A.B.

Viewing the evidence as a whole, we hold that the State presented sufficient evidence to support the jury's finding that appellant sexually assaulted K.B. on or about January 15, 1993.

## EVIDENTIARY RULINGS

In points of error two through six, appellant complains about several evidentiary rulings by the trial court. Specifically, appellant contends the trial court erred in: (1) allowing the investigating police detective to testify that, in his expert opinion, appellant sexually assaulted K.B., and that K.B. was telling the truth; (2) admitting into evidence the statement A.B. made to the police regarding what her son told her; (3) excluding reputation testimony offered by the defense; (4) allowing the State to introduce evidence during the cross-examination of R.P. regarding statements R.P. made during a court-ordered counseling session; and (5) allowing the State to introduce extraneous offense evidence during the cross examination of R.P. We will address each of these contentions in turn.

### 1. Admission of Opinion Testimony of the Investigating Officer

The investigating officer, Detective Alphonso Amato, testified that in the last thirteen years, he had investigated over 1500 cases of sexual assault for the juvenile section crimes unit of the Houston Police Department, and he considered himself an expert in the area of criminal investigation of

---

3. The jury was asked to find if appellant (1) penetrated the anus of K.B. with his finger, (2) contacted the anus of K.B. with his mouth, (3) contacted the anus of K.B. with his sexual organ, or (4) penetrated the mouth of K.B. with his sexual organ. The jury answered "We do not" to the first three special issues, and answered "We do" to the fourth issue.

sexual assault cases. Appellant did not object to Detective Amato's being qualified as an expert witness. Detective Amato testified about his investigation of the case, and his interviews with K.B. and A.B. The State then asked the following question:

Q: Based on your qualifications today as an expert in the field of criminal investigation in sexual assault cases, do you have an opinion as to whether or not [K.B.] was sexually assaulted by [appellant]?

The defense immediately objected:

[Defense Counsel]: Objection, Your Honor. We stipulated as to his expertise in sexual assault investigations, but not as to an ultimate conclusion in the case, which the jury is to decide, and that's whether or not it occurred.

The State replied that, as an expert, the officer could testify as to his opinion on the issue, and it did not invade the province of the jury. The defense disagreed, contending that the intent of the question was to sway the jury by the use of the officer's expert opinion. The court stated that because the defense had not placed any restrictions on the officer's qualifications at the time he was confirmed as an expert, the objection was overruled.

The State repeated the question, and the officer answered:

A: I think [K.B.] is telling the truth.

Q: Let's get your answer to my question: Do you believe that he was sexually assaulted by [appellant]?

A: Yes, I do.

During deliberations, the jury sent out a note asking for that specific portion of the testimony to be read back to them. Appellant moved for a mistrial based on the note, and the previous objection to the testimony. The judge denied the mistrial.

Rule 702 of the Texas Rules of Civil Evidence governs testimony by experts. It provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.CIV.EVID. 702.

The Texas Court of Criminal Appeals recently addressed the issue of whether an expert witness also may be an "expert" on credibility. *Yount v. State*, 872 S.W.2d 706, 710 (Tex.Crim.App.1993). In *Yount*, the trial court allowed a pediatrician with experience examining child abuse victims to testify that she had seen very few cases in which the child victim was not telling the truth, over an objection that her testimony bolstered the child complainant's testimony. The court of criminal appeals seriously questioned whether a witness possessing specialized knowledge concerning sexually abused children also possessed specialized knowledge regarding the truthfulness of those children. *Id.* The court stated that no reliable test for truthfulness exists, experts on child abuse are not human lie detectors, and jurors are just as capable as an expert at drawing conclusions concerning the credibility of the witnesses. *Id.* The court concluded that expert testimony that a particular witness is truthful, or testimony that is *"tantamount to di-* rect testimony that the complainant would not lie," is inadmissible under Texas Rule of Criminal Evidence 702.[4] *Yount*, 872 S.W.2d at 711 (emphasis added). The court went further and held conclusively that Rule 702 does not permit an expert to give an opinion that the complainant is truthful. *Id.* at 712.

▮▮▮▮▮ The State argues that appellant waived error because K.B.'s mother had already testified, without objection, that he was telling the truth. Generally, alleged error in the admission of evidence is waived when essentially the same evidence is admitted

---

4. *Yount* was decided under the criminal rule, which is worded identically to the civil rule. Other courts of appeals have relied on the civil rule in holding that experts may not testify as to the credibility of witnesses. *See James v. Texas Dept. of Human Serv.*, 836 S.W.2d 236, 243–44 (Tex.App.—Texarkana 1992, no writ) (holding ex- pert on sexually abused children could not testify that the children witnesses were truthful); *Ochs v. Martinez*, 789 S.W.2d 949, 958 (Tex.App.—San Antonio 1990, writ denied) (stating that a mental health worker's opinion as to whether a child is telling the truth about sexual abuse is inadmissible).

without objection elsewhere in the trial. *Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984); *Marling v. Maillard,* 826 S.W.2d 735, 739 (Tex.App.—Houston [14th Dist.] 1992, no writ). However, in this case, Detective Amato's testimony was offered to the jury in the form of expert opinion testimony. A jury would expect a mother to testify that her son was truthful, and would likely view such testimony with natural skepticism.

On the other hand, the testimony of a police officer qualified as an expert on the investigation of sexual assault cases would likely carry exceptional weight and an aura of reliability which could lead the jury to abdicate its role in determining K.B.'s credibility. *See Ochs v. Martinez,* 789 S.W.2d 949, 957 (Tex.App.—San Antonio 1990, writ denied). In the absence of concrete evidence, the jury may be *unduly* inclined to rely upon the expert's opinion on the issue as to whether the sexual abuse occurred. *Id.* (emphasis added). The mother's opinion of her son's truthfulness was not the same caliber of evidence as the officer's expert testimony that K.B. was telling the truth and that the incident actually happened. Thus, error was not waived by the mother's testimony coming in without objection.

■ A determination of who is telling the truth is the sole province of the jury. We hold that, under Texas Rule of Civil Evidence 702, the trial court erred in allowing Detective Amato to testify that, in his expert opinion, appellant sexually assaulted K.B. and that K.B. was telling the truth.

### 2. Admission of A.B.'s Statement

■ In his third point of error, appellant argues that the trial court erred in allowing the State to introduce into evidence the written statement A.B. gave to the police regarding what K.B. told her about the sexual assault. The State first attempted to introduce the statement during the testimony of A.B. The defense objected that it was duplicative of her testimony, irrelevant, and hearsay. The State responded, stating: "This is part of the physical evidence that was gathered by the investigating officer in this case.... It's certainly relevant to outcry...." The trial court sustained the ob-

jection. Later, during the testimony of Detective Amato, the State again offered the statement. The defense again objected that it was hearsay, and that the witness who made the statement was available to testify. This time, the State countered: "The exception to the hearsay objection is that this is the outcry statement that was reduced to writing from the outcry witness in this case ... and we offer it in that respect." The trial court overruled the objection and admitted the statement into evidence.

■ Generally, a statement made out of court offered in court for the truth of the matter contained in the statement is inadmissible hearsay. TEX.R.CIV.EVID. 801. However, the family code contains an exception for statements made by a child victim of sexual assault. *See* TEX.FAM.CODE ANN. § 54.031 (Vernon 1986). Several requirements must be met before such a statement becomes admissible over a hearsay objection. Section 54.031 applies if (1) the child victim is twelve years of age or younger; (2) the statement was made by a child who was the alleged victim of the abuse; and (3) the statement was made to the first person, eighteen years or older, to whom the child made a statement about the incident. § 54.031(a), (b). A statement that meets the requirements of subsections (a) and (b) is then excepted from the hearsay rule if:

(1) on or before the 14th day before the date the [adjudication] hearing begins, the party intending to offer the statement:

(A) notifies each other party of its intention to do so;

(B) provides each other party with the name of the witness through whom it intends to offer the statement; and

(C) provides each other party with a written summary of the statement;

(2) the juvenile court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child who is the alleged victim testifies or is available to testify at the hear-

ing in court or in any other manner provided by law.

§ 54.031(c).

While the requirements of subsections (a) and (b) are met in this case, the appellate record does not reflect that the State complied with the notice and hearing provisions contained in subsection (c). Therefore, although the State argued that the statement was admissible as an outcry of a child victim, the court erred in admitting the statement on that basis over a hearsay objection. *See Long v. State,* 800 S.W.2d 545 (Tex.Cr.App. 1990).

■ On appeal, the State argues that the statement was admissible as a prior consistent statement under Tex.R.Civ.Evid. 801(e)(1)(B). However, at no time during the trial did the State argue to the trial court that the statement was admissible as a prior consistent statement, nor did the State lay the foundation necessary to show that the statement was being offered to rebut a charge of recent fabrication, improper influence, or improper motive in testifying. *See* Rule 801(e)(1)(B). Thus, the statement was not admissible as a prior consistent statement under Rule 801(e)(1)(B), or as an exception to the hearsay rule under section 54.031, and the trial court erred in admitting the statement into evidence.

### 3. Exclusion of Reputation Testimony

■ In his fourth point of error, appellant contends the trial court erred in excluding character testimony concerning his reputation. Appellant attempted to present testimony by the mother of one of his friends that he had a reputation in the community for the "safe and moral treatment of children." The State objected, and the trial court sustained the objection, refusing to allow appellant to present the reputation testimony to the jury. However, the trial court did allow appellant to present the testimony in a bill of exception. Out of the presence of the jury, the witness testified that she was familiar with appellant's reputation in the community for treating children safely and morally, that he had a good reputation, and that his reputation made it improbable that he sexually assaulted a ten-year-old boy.

■ Generally, character evidence is not admissible to show that a person acted in conformity with that character on a particular occasion. Tex.R.Civ.Evid. 404(a). However, the rules of civil evidence allow a person accused of conduct involving moral turpitude to present evidence of pertinent character trait. Rule 404(a)(1); *State Bar v. Evans,* 774 S.W.2d 656, 658 (Tex.1989). Such evidence may be offered in the form of reputation testimony. Tex.R.Civ.Evid. 405(a). Thus, the initial question before us is twofold: (1) is the evidence that of a pertinent character trait, and (2) is the charged offense conduct involving moral turpitude?

The issue in this case was whether appellant had sexually assaulted a child. Therefore, the character trait the defense sought to introduce was pertinent to the offense charged. *See Evans,* 774 S.W.2d at 658 (holding testimony in State Bar disciplinary proceeding that an attorney overbilled clients was admissible under Rule 404(a)(1) as rebuttal testimony to attorney's offer of pertinent character evidence of honesty and integrity); *Thomas v. State,* 669 S.W.2d 420, 423–24 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd) (holding evidence that defendant had a good reputation in the community for being a moral person, and for the safe and proper treatment of young children was admissible to show the improbability that the defendant raped his step-daughter); *Skelton v. State,* 655 S.W.2d 302, 304 (Tex.App.—Tyler 1983, pet. ref'd as untimely filed) (holding defendant accused of sexual abuse of a child had the right to present reputation testimony to show it was improbable he committed the act charged).

The next issue we must decide, however, is whether sexual assault of a child is conduct involving moral turpitude. In determining what involves moral turpitude, "there appear to be no clear cut criteria." *Robertson v. State,* 685 S.W.2d 488, 492 (Tex.App.—Fort Worth 1985, no pet.) (discussing which misdemeanors involve moral turpitude: theft, forgery, and prostitution). Generally, the civil cases discussing moral turpitude involve attorney disciplinary actions, because the Texas Rules of Disciplinary Procedure define

a "serious crime" requiring disciplinary action as "any felony involving moral turpitude." TEX.R.DISCIPLINARY P. 1.06(U) (1992). These cases state that the question of whether a particular crime involves moral turpitude is a question of law. *In re Humphreys,* 880 S.W.2d 402, 407 (Tex.), *cert. denied,* —— U.S. ——, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994); *State Bar v. Heard,* 603 S.W.2d 829, 835 (Tex.1980). A general definition of moral turpitude has emerged in the attorney disciplinary cases which we feel may be applied to the case before us today.

■■■■■ Crimes involving moral turpitude are those that involve dishonesty, fraud, deceit, misrepresentation, or *deliberate violence. Duncan v. Board of Disciplinary Appeals,* 898 S.W.2d 759, 761 (Tex.1995) (emphasis added). Furthermore, moral turpitude can be construed as including offenses concerning matters of personal morality. *Humphreys,* 880 S.W.2d at 407 (quoting AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT 8.4 comment (1992)). Moral turpitude has also been defined as:

1) anything done knowingly contrary to justice, honesty, principle, or *good morals.*

2) *an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men* or to society in general.

3) *something immoral in itself,* regardless of whether it is punishable by law. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude.

4) *immoral conduct* is that conduct which is *willful, flagrant, or shameless,* and which shows a *moral indifference to the opinion of the good and respectable members of the community.*

*Turton v. State Bar,* 775 S.W.2d 712, 716 (Tex.App.—San Antonio 1989, writ denied) (citing *Muniz v. State,* 575 S.W.2d 408, 411 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.)) (emphasis added).

■■■ Clearly, sexual assault of a child encompasses each of these definitions. It is a crime of deliberate violence; concerns personal morality; is against good morals; is an act of baseness, vileness, and depravity; is immoral in itself; and shows a moral indiffer-

ence to the opinion of respectable members of a community. It can be characterized as "universally morally reprehensible." *Turton,* 775 S.W.2d at 717.

We find that because he was charged with the offense of sexual assault of a child, appellant was accused of conduct involving moral turpitude. Therefore, appellant was entitled to present to the jury evidence of a pertinent character trait to show that it was improbable that he committed the crime. The trial court erred in excluding the testimony of appellant's reputation witness.

### 4. Admission of Testimony Regarding Attitudes of Appellant's Father

■■■ In his fifth point of error, appellant contends the trial court erred in allowing the State to cross examine appellant's father, R.P., about statements R.P. made in a court-ordered counseling session. The court ordered appellant and his family to attend an evaluation for the purpose of generating a juvenile probation social history report. During the State's cross examination of R.P., the prosecutor approached the bench and apprised the trial court of his intent to ask R.P. about statements he made during the interview. The prosecutor argued that R.P. had "opened the door," and the statements were relevant to his credibility. The defense objected that the evaluation was part of the social history probation report, which could not be placed in evidence, that it was irrelevant and that R.P. had not opened the door by any statement. Outside the presence of the jury, the court allowed the prosecutor to present the substance of the questions he was going to ask, and the defense additionally objected that the evidence was not relevant. The trial court overruled the defense's objections and allowed the State to cross examine R.P. as to what he said to the doctor in the interview—statements regarding his attitudes toward homosexuality.

Contrary to the State's claims, R.P.'s testimony was not inconsistent with statements he made in the interview with the doctor. Thus there were no prior inconsistent statements. Moreover, the testimony was irrelevant as the defense argued, and highly prejudicial. We hold the trial court erred in al-

lowing the State to cross-examine R.P. about his comments.

### 5. Cross–Examination Regarding Extraneous Offense

In his sixth point of error, appellant contends the trial court erred in allowing the State to cross-examine appellant's father, R.P., about another accusation leveled against appellant in Arkansas. The State contends that R.P. "opened the door" on direct examination to the admission of evidence impeaching R.P.'s credibility.

On direct, defense counsel elicited the following testimony:

Q: Mr. [P.], do you believe that the allegations that—these allegations against your son by [K.B.] are true?

A: Absolutely not.

Q: Can you tell us why?

A: All the things that have happened, the circumstances, and I believe my son. I've looked at the charges and I've looked in the legal book. There are things that are printed in the legal book one by one exactly. My son wouldn't do that.

When on cross-examination the State began questioning R.P. about another allegation against appellant, appellant objected that the questions were improper impeachment.

 The State argues that R.P.'s statement that his son "wouldn't do that" is a "global assertion that Appellant is incapable of committing such an offense." Therefore, the State contends, R.P. has given character testimony and may be impeached on cross-examination with specific instances of conduct contrary to the character testimony. *See* TEX.R.CIV.EVID. 405(a). The State, however, is confusing the standard applied when a witness is impeached using specific instances of his own conduct with that applied when a character witness is impeached using instances of misconduct on the part of the

defendant. *Compare* TEX.R.CIV.EVID. 609 *with* TEX.R.CIV.EVID. 405(a).

 Under Rule 609, when a witness takes the stand and leaves the false impression of *his* "trouble" with the police, it is legitimate cross-examination to prove that *the witness* has been "in trouble" on other occasions. *Ramirez v. State,* 802 S.W.2d 674, 676 (Tex.Crim.App.1990) (quoting *Nelson v. State,* 503 S.W.2d 543, 545 (Tex.Crim.App. 1974)) (emphasis added).[5] *See also Prescott v. State,* 744 S.W.2d 128, 130–131 (Tex.Crim. App.1988); *Long v. State,* 820 S.W.2d 888, 895 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) (providing that if *the accused is a witness,* he may be impeached by prior offenses if he leaves a false impression as to the extent of *his* prior arrests, convictions, charges, or trouble with the police). It is when the witness makes a blanket statement concerning *his* conduct that he "opens the door" and his credibility may be impeached with "mere accusations, or specific acts of misconduct." *Murphy v. State,* 587 S.W.2d 718, 722 (Tex.Crim.App. [Panel Op.] 1979) (emphasis added).

On the other hand, when a witness testifies as to the character of the accused, Rule 405(a) allows "do you know" questions to be asked of the witness to test the basis for his personal opinion. *Reynolds v. State,* 848 S.W.2d 785, 788 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Thomas v. State,* 759 S.W.2d 449, 452 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).[6] Here, by making the statement "My son wouldn't do that," R.P. became a character witness, espousing his opinion about appellant's propensity to commit the crime. *See Hedicke v. State,* 779 S.W.2d 837, 839 (Tex.Crim.App.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990) (stating that personal opinion testimony of a witness who knows the person is one method of proving character).[7]

---

5. Because of a dearth of cases in the civil context involving the prior convictions of witnesses or parties, we turn to the cases analyzing the analogous criminal rule.

6. Because the case law is again bereft of cases construing the civil rule, TEX.R.CIV.EVID. 405, we

turn to cases analyzing the analogous criminal rule, TEX.R.CRIM.EVID. 405.

7. We note that the State did not use "do you know" questions in cross-examining R.P. While we do not base error on the failure to use "magic words," we caution practitioners that this area can be hypertechnical. *See, e.g., Rutledge v.*

There are two limitations on the right to cross-examine a character witness about specific instances of a defendant's conduct. First, there must be some factual basis for the incidents inquired about; second, those incidents must be relevant to character traits at issue in the trial. *Reynolds,* 848 S.W.2d at 788; *Lancaster v. State,* 754 S.W.2d 493, 496 (Tex.App.—Dallas 1988, pet. ref'd). The foundation for inquiring into the specific instances of conduct must be laid outside the presence of the jury. *Id.* The function of the "factual basis" rule is to provide trial and appellate courts with a test for determining whether a prosecutor's "do you know" questions are asked in good faith. *Reynolds,* 848 S.W.2d at 789.

Because R.P. stated his opinion that appellant would not commit the crime of which he was accused, evidence that appellant had been accused of another sexual assault was relevant to a character trait at issue in the trial, and the second requirement for challenging a character witness was met. However, no factual foundation was laid outside the jury's presence for inquiry into the specific instances of conduct.

During a recess in the trial, after R.P. had made the statement that his son "wouldn't do that," the State apparently informed defense counsel of its intent to cross-examine R.P. about the Arkansas allegation. Appellant filed a Motion in Limine in an attempt to keep the allegations from being heard by the jury, arguing that the allegations were mere unproven accusations, and were unfairly prejudicial to appellant in the absence of a judicial determination that the proposed testimony was admissible evidence or proper cross-examination. At the hearing on the motion, the State argued that the motion was untimely, because it was not filed before the trial began, and that R.P. had created a false impression in the jury's mind and thus "opened the door" to cross-examination on the specific act of misconduct. The defense responded, again stating that the evidence was an unfounded accusation, highly prejudicial, and inflammatory. No facts of the allegation were discussed, and the State made no attempt to lay a factual predicate for the incident. *Cf. Reynolds,* 848 S.W.2d at 788 (finding State laid factual predicate for "do you know" question by offering the sworn testimony, outside the jury's presence, of the person appellant had assaulted previously); *Lancaster,* 754 S.W.2d at 496 (stating prosecutor showed factual basis for alleged incidents by presenting testimony, outside the jury's presence, of the complaining witnesses in the other occurrences).

Without laying a factual foundation for the questions regarding the alleged Arkansas incident, the State did not meet its burden to show that it was offering the evidence of the other incident in good faith. Thus, the State exceeded the scope of cross-examination permitted by Rule 405(a). *See id.* The trial court erred in allowing the State to cross-examine R.P. about the alleged extraneous conduct.

**HARM ANALYSIS**

Having concluded that the trial court made five erroneous evidentiary rulings, it now falls to us to determine whether appellant was harmed by the trial court's errors. The civil standard for harmless error applies to juvenile delinquency adjudications. *In re O.L.,* 834 S.W.2d 415, 420 (Tex. App.—Corpus Christi 1992, no writ). *See also S.S. v. State,* 879 S.W.2d 395, 397 (Tex. App.—Eastland 1994, no writ); *In re G.A.O.,* 854 S.W.2d 710, 718 (Tex.App.—San Antonio 1993, no writ); *In re S.B.C.,* 805 S.W.2d 1, 8 (Tex.App.—Tyler 1991, writ denied); *In re S.C.,* 715 S.W.2d 379, 384 (Tex.App.—San Antonio 1986, writ ref'd n.r.e) (all using civil harm analysis standard).

In civil cases, TEX.R.APP.P. 81(b)(1) governs harm analyses on appeal. An appellate court shall not reverse a judgment on appeal unless the court finds that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. In other words, we are to determine if the trial court's errors denied appellant a fair trial.

*State,* 749 S.W.2d 50, 53 (Tex.Crim.App.1988) (discussing the purpose of using questions beginning with the specific words "have you heard" to impeach a reputation witness).

*See L.G.R. v. State*, 724 S.W.2d 775, 776 (Tex.1987). We are of the opinion that the cumulative effect of the trial court's erroneous evidentiary rulings in this case denied appellant a fair adjudication hearing.

The jury first heard "expert testimony" that the complainant was telling the truth and that the incident actually happened. As discussed above, such testimony was likely to carry an aura of reliability which could have led the jury to abdicate its role in determining just which witnesses were telling the truth. In fact, during deliberations the jury sent out a note asking for that specific portion of testimony to be read back. The admission of this testimony alone probably caused the rendition of an improper verdict. However, the trial court made several additional errors in the admission of evidence.

The jury was given a copy of the statement A.B. made to the police, which is hearsay. Although the outcry statement of a child victim of sexual assault may be excepted from the hearsay prohibition, TEX.FAM.CODE ANN. § 54.031, in this case the State did not meet the procedural requirements necessary to assure the reliability and accuracy of such a statement. *See* § 54.031(a), (b). A.B. testified at the hearing concerning much of what was contained in the statement, but the statement also contained hearsay from Mrs. J., and other facts not testified to at the hearing, including K.B.'s statement that he had some bleeding after the incident. However, the jury acquitted appellant of the offenses involving penetration. Thus, although the statement contained double hearsay and extra facts, and was not tested for indicia of reliability as mandated by the Family Code, the introduction of the statement into evidence was harmless.

Appellant also was prevented from putting on evidence of his good reputation for "the safe and moral treatment of children." The State argues that the trial court's error in excluding the testimony was harmless because the witness testified before the jury that she was comfortable allowing her fifteen-year-old son to be alone with appellant. However, as appellant argues, this is not the same caliber of evidence as reputation testimony. Furthermore, unlike K.B., who was ten at the time of the alleged incident, a fifteen-year-old is appellant's peer. The purpose of allowing reputation testimony is to establish that it is improbable that the accused committed the crime. Appellant was harmed because he was denied this opportunity.

The trial court also allowed the State to impeach the testimony of R.P., appellant's father, by asking him about statements he made during a court-ordered counseling session. Although the statements were irrelevant to the ultimate issue in the case, the admission of the statements was calculated by the State to show the jury that R.P. was a "bad" person and unworthy of belief. *See Murphy*, 587 S.W.2d at 722. The testimony of R.P. was crucial to appellant's defense. R.P provided alibi testimony, and discounted K.B.'s description of appellant's bedroom. Thus, the admission of improper impeachment evidence could have dealt a crushing blow to appellant's defense if the jury felt that R.P. was untrustworthy, and probably denied appellant a fair adjudication hearing.

Finally, the trial court allowed the State to cross-examine R.P. about an extraneous incident, in which appellant was accused but never charged with or convicted of sexual assault. Allowing the State to place before the jury an entirely unproven, albeit similar, incident most certainly influenced the jury into believing that appellant must have committed the offense for which he was charged in the current case. A defendant should be tried only for the crimes alleged and not for being a criminal in general. *See Abdnor v. State*, 871 S.W.2d 726, 738 (Tex.Crim.App. 1994). Thus, the admission of this uncharged, unproven accusation was reasonably calculated to cause and probably did cause the rendition of an improper verdict.

In summary, several of the trial court's evidentiary rulings, notably the allowance of the police officer's testimony and the admission of an extraneous allegation of sexual assault, were in and of themselves enough to warrant a reversal. However, the combined effect of even the less egregious errors is such that we cannot say that appellant received a fair adjudication hearing. We hold, in accordance with Rule 81(b)(1), that the

**212**

errors amounted to such a denial of appellant's rights as were reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

In his final point of error, appellant contends his defense counsel rendered ineffective assistance. In light of our disposition of the case, we have no need to address this point.

On motion for rehearing, appellant claims that this case must be reversed and dismissed because juvenile court's jurisdiction to adjudicate conduct as delinquent ceases when a person is seventeen years of age or older. Appellant is now nineteen. *State v. Casanova,* 494 S.W.2d 812, 813 (Tex.1973) (Where a delinquency judgment is reversed and the juvenile is over seventeen, it is error to remand for a new trial because the juvenile court has lost jurisdiction); *G.A.O. v. State,* 854 S.W.2d 710 (Tex.App.—San Antonio 1993 no writ) (authority exists that an appellant court may not remand for a new adjudication hearing in cases involving persons who are seventeen years of age or older because the juvenile court has no jurisdiction).

Therefore, the judgment of the trial court is REVERSED and the case is DISMISSED.