Opinion issued March 22, 2007

 














In The

Court of Appeals

For The

First District of Texas






NOS. 01-05-01049-CR






CARLOS WILFREDO MELGAR, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 977761






O P I N I O N

 A jury convicted appellant, Carlos Wilfredo Melgar, of kidnaping and assessed
punishment at nine years' confinement, probated for nine and one-half years, and a
$9,000 fine. In three points of error, appellant contends that (1) the trial court erred
by excluding the testimony of five character witnesses, who were business associates
of appellant, that appellant is an honest, truthful, and non-violent person, (2) the
evidence is factually insufficient, and (3) appellant received ineffective assistance of
counsel at trial. We reverse and remand.

BACKGROUND


 The complainant, Hector David Amaya, was in the business of buying cars
from insurance companies, repairing them, and then selling them. Appellant
purchased two cars from Amaya and Amaya promised to repair them. Appellant
wrote a check to pay Amaya, but, when there were problems with the checks'
clearing, he wrote Amaya another check. Eventually, both checks cleared. Amaya
cashed both checks and kept the money. It is undisputed that Amaya owed appellant
$2100 because appellant had paid Amaya twice.

 The State's version of the events giving rise to appellant's being charged with
kidnaping is as follows: On February 14, 2004, Amaya went out to buy auto parts at
salvage yards and returned home around 11:30 a.m. When he got out of his car,
appellant drove up behind him and blocked him in the driveway. Three men got out
of the car. Appellant said that he had come for his money. One of appellant's
companions told Amaya that he was not going anywhere unless he had appellant's
money, and, if he did not have the money, they were going to take him to a vacant lot
in Conroe and kill him. Amaya testified that he struggled with the men as they forced
him into the car. Amaya also testified that one of his employees, Lucio Lopez, saw
Amaya struggling with the men. When the men pulled out guns, Lopez ran into the
house. Lopez did not testify at trial.

 Amaya testified that, as they were headed toward the feeder road of the
freeway, they heard a police siren. Instead of getting on the freeway, appellant pulled
into a McDonald's restaurant and drove behind the dumpsters. Amaya begged for
more time to get the money. Appellant told Amaya that he would give him until 5:00
p.m. on Monday, but, now, instead of $2100 he wanted $4,000. Appellant said that
if Amaya did not show up with the money, appellant and his companions would kill
Amaya and his family and burn down their house.

 After the men left Amaya at McDonald's, he called his daughter from the pay
phone and told them where he was. The police were already at Amaya's house
because his family had called them after Lopez ran into the house. The police went
to the McDonald's and picked up Amaya. Amaya told the police that he had been
kidnaped, but he did not tell them that he knew who did it. After talking with his
family, Amaya decided to go to the police station and give a statement implicating
appellant.

 The defense presented the following version of the events of February 14,
2004. Appellant had gone to eat breakfast with three of his employees, Angela
Palma, Manuel Martinez, and Omar Velasquez. Because they were near Amaya's
house, appellant decided to drive by to try to collect the money that Amaya owed him. 
When they first arrived, Amaya was not there, so appellant parked the car and waited. 
One of Amaya's neighbors asked appellant to move his car, and appellant did so. 
When he saw Amaya arrive, appellant moved the car back in the drive of Amaya's
house, got out of the car, and, together with Martinez, approached appellant to speak
with him. Amaya stated that he did not have the money with him, but that they could
drive to the bank together to get it. Amaya got in the car with appellant and the three
other men, and they headed toward the bank. On the way, Amaya noted that because
it was a holiday, the bank might be closed. Amaya volunteered to be dropped off
somewhere along the feeder road so that appellant would not have to take him home. 
Appellant pulled into a McDonald's parking lot and dropped Amaya off. Appellant
testified that no one had a weapon, assaulted Amaya, or threatened him in any way.

 Velasquez and Martinez both testified and corroborated appellant's version of
the events. Julio Salas, the neighbor who had asked appellant to move his car, also
testified that he never saw anyone force Amaya into appellant's car. 

EXCLUSION OF CHARACTER WITNESS EVIDENCE


 In point of error one, appellant contends the trial court erred by not permitting
him to present the testimony of five character witnesses, pursuant to rule 404(a)(1),
which provides:

 (a) Evidence of a person's character or character trait is not admissible for the
purpose of proving action in conformity therewith on a particular occasion,
except

 (1) Evidence of a pertinent character trait offered:

 (A) by an accused in a criminal case, or by the prosecution to
rebut the same[.]


Tex. R. Evid. 404(a)(1)(A).


 At trial, the following exchange took place during the questioning of defense
witness, Calvin Phelps:

 [Defense Counsel]: How do you know Mr. Melgar?


 [Phelps]: I met Mr. Melgar when I got ready to build my first 6,000
square foot warehouse. I had gotten bids from other people and I asked
him to meet me at the job site --


 [Prosecutor]: Objection to relevance.


 [The Court]: Sustained.


 [Defense Counsel]: May we approach your Honor?


 [The Court]: Sure.


 [Defense Counsel]: Judge, I'm calling him as a character witness and I
just want to go - I want the jury to know the extent that they know him
so that they know when he testifies as to his character that he has the
background sufficient to do that.


 [The Court]: What character are you planning?


 [Defense Counsel]: Only trait of character that I think is in issue right
now is whether he has enough knowledge to know whether or not he
is an honest person or truthful, is really the character trait at issue
and the character trait of whether he's a violent person. So I'm just
going to go --


 [The Court]: That has to do with character in the community, not
individual relationships. So unless he has knowledge of his charter in
the community his testimony is irrelevant.


 [Defense Counsel]: Well, my understanding is that I can ask him if he
has a personal - do you have an opinion as to whether he's an honest
person and also in terms of reputation character you have - do you have
- do you know his reputation in the community for being an honest
person.


 [The Court]: All they've done is had business relationships.


 [Defense Counsel]: If the Court is saying I can't ask him about
reputation in the community, can I ask him about his personal
knowledge, his personal opinion of his reputation.


 [The Court]: No.


 [Defense Counsel]: Those being two separate.


 [The Court]: No. No.


 [Defense Counsel]: Well, then I will - well, then I've got several
character witnesses. I can rest and if I can make a bill after that.


 [The Court]: If you're going to be bringing in people who've done
business with him saying he's a good businessman -- 

[Emphasis added.]

 The State then took each of the character witnesses on voir dire to show that
they were not familiar with appellant's reputation in the community, and, thus, could
not provide reputation evidence. The trial court sustained the State's objection,
stating, " I find that Mr. Phelps, Mr. Volandksy, Mr. Rutherford, Mr. Ortiz and Mr.
Honein do not qualify, pursuant to the statute and case law, to testify as reputation
witnesses in the guilt/innocence phase of the trial. 

 Defense counsel then clarified his objection as follows:

 Your Honor, just with regard to the character witnesses who took the
stand outside the presence of the jury, I just want to make clear that my
objection is that I intended to proffer that evidence as opinion of
character and that each of those gentlemen was to offer an opinion of
character of Carlos Melgar.


 The trial court responded as follows:

 And I understand. If it wasn't clear for the record, [defense counsel] had
made a timely objection which I overruled in making my decision so 
that - you know, if it's not clear on the record, that was what I intended
to do. So it's clear for you guys and gals at the Court of Appeals, if that
becomes necessary. It is preserved.


[Emphasis added.]


Was the Character Evidence Admissible?

 Appellant argues that he should have been allowed to elicit evidence from
character witnesses that he was a truthful, honest, nonviolent businessman. The State
responds that such evidence is not admissible under rule 608, which provides:

 (a) The credibility of a witness may be attacked or supported by
evidence in the form of opinion or reputation, but subject to these
limitations:

 (1) the evidence may refer only to character for truthfulness
or untruthfulness; and

 (2) evidence of truthful character is admissible only after
the character of the witness for truthfulness has been
attacked by opinion or reputation evidence or otherwise.

 (b) Specific instances of the conduct of a witness, for the purpose of
attacking or supporting the witness' credibility, other than conviction of
crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.


Tex. R. Evid. 608. The State argues that because appellant's character for
truthfulness had not been attacked, the character evidence regarding appellant's
character for truthfulness was not admissible.

 However, we note that rule 608 is an impeachment rule. Appellant was not
seeking to admit the character witnesses' testimony in response to his having been
impeached. Instead, he sought to admit their testimony to show that, in light of his
character for truthfulness, honesty, and non-violence, it was unlikely that he
committed the charged offense.

 Generally, character evidence is not admissible to show that a person acted in
conformity with a character trait on a particular occasion. Tex. R. Evid. 404(a). 
However, an accused in a criminal case is permitted to introduce evidence of a
specific good-character trait to show that it is improbable that he committed the
charged offense, when that character trait is relevant to the offense. Id.; Valdez v.
State, 2 S.W.3d 518, 519 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd); Thomas
v. State, 669 S.W.2d 420, 423 (Tex. App.--Houston [1st Dist.] 1984, pet. ref'd). A
pertinent trait is "one that relates to a trait involved in the offense charged or a
defense raised." Spector v. State, 746 S.W.2d 946, 950 (Tex. App.--Austin 1988,
pet. ref'd). 

 For example, in a prosecution for a crime of violence, the defendant's character
for being peaceful is pertinent, because evidence of peaceful character makes it less
likely that the defendant committed the crime. "In a murder case, the accused's
reputation for peacefulness, or non-aggressive behavior, is the appropriate inquiry." 
Wheeler v. State, 67 S.W.3d 879, 882 n. 2 (Tex. Crim. App. 2002) (quoting Valdez
v. State, 2 S.W.3d 518, 520 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd)). 
Similarly, a defendant charged with sexual assault of a child is entitled to proffer
evidence of his good character for "moral and safe relations with small children or
young girls" under rule 404(a)(1)(A). Wheeler v. State, 67 S.W.3d at 882. 

 In Thomas v. State, the defendant, who was charged with aggravated sexual
assault of a child, called five character witnesses to testify at the guilt-innocence
phase of the trial. 669 S.W.2d at 421, 423. The trial court permitted the witnesses
to testify that the defendant had a good reputation in the community for being
peaceful and law-abiding, but did not permit them to testify that appellant had a good
reputation in the community for being a moral person and for the safe and proper
treatment of young children. Id. This Court held that the trial court erred by
excluding the proffered evidence because it was relevant to show the improbability
that appellant raped his stepdaughter. Id. at 423-24. 

 In the case of In re G.M.P., 909 S.W.2d 198, 201 (Tex. App.--Houston [14th
Dist.] 1995, no pet.), the defendant, a juvenile, was charged with aggravated sexual
assault. At trial, the defendant attempted to present testimony from a character witness
that he had a reputation in the community for the "safe and moral treatment of
children." Id. at 207. The Fourteenth Court of Appeals held that (1) the character trait
at issue--the safe and moral treatment of children--was pertinent to the charged
offense and (2) the crime was one of moral turpitude. Id. at 207-08. As such, the
court held that the trial court erred by excluding the evidence proffered by the
defendant's reputation witness. Id. at 208.

 In this case, appellant was charged with kidnaping a car salesman to collect a
debt. The evidence appellant sought to introduce was testimony from five other
business associates who would testify that appellant was an honest, non-violent
businessman, whom they trusted. As such, the evidence appellant sought to introduce
was pertinent to the charged crime and admissible by appellant to show that, in light
of his character, it was unlikely that he committed the charged offense. (1)

Was the Character Evidence Offered in the Proper Form?

 Having decided that the tendered character evidence is generally admissible, we
turn to whether the character evidence was offered in the proper form. The trial court
excluded the character evidence because the witnesses were not familiar with the
defendant's reputation for truthfulness in the community. Neither were the witnesses
permitted to give their opinion as to appellant's truthfulness based on their business
dealings with him.

 If evidence of a person's character or character trait is admissible [under rule
404(a)(1)(A)], proof may be made through reputation or opinion testimony. See Tex.
R. Evid. 405(a). Therefore, the character witnesses' testimony was not inadmissible
simply because it was in the form of an opinion rather than reputation. Under the
Rules of Evidence, the rigid common-law distinction between opinion and reputation
evidence has been relaxed. See Murphy v. State, 4 S.W. 3d 926, 932-33 (Tex.
App.--Waco 1999, pet. ref'd).

 If evidence is offered in the form of an opinion, "a witness must have been
familiar with . . . the underlying facts or information upon which the opinion is based,
prior to the day of the offense." Tex. R. Evid. 405(a). In this case, the witnesses'
opinions of appellant's character were formed through their business dealings with
him, all of which occurred before the date of the offense.

 Accordingly, we hold that appellant's proffered character evidence was relevant
and admissible under rule 404(a)(1)(A). Furthermore, character evidence in the form
of an opinion is a proper way of introducing such evidence under rule 405(a).

Was the Improper Exclusion of Character Evidence Harmful?

 Having found error, we next conduct a harm analysis to determine whether the
error requires reversal of the trial court's judgment. Generally, the erroneous
admission or exclusion of evidence is nonconstitutional error governed by Rule of
Appellate Procedure 44.2(b) if the trial court's ruling merely offends the rules of
evidence. See Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). When
evaluating harm from nonconstitutional error flowing from the exclusion of relevant
evidence, we "need only determine whether or not the error affected a substantial right
of the defendant." Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). To
make such a determination, we must decide whether the error had a substantial or
injurious effect on the jury verdict. Id.

 For a case applying a harmless-error standard similar to this case, we look to In
re G.M.P., a juvenile case applying the civil harmless-error standard under former
Rule of Appellate Procedure 81(b)(1). See In re G.M.P., 909 S.W.2d at 210-211 ("An
appellate court shall not reverse a judgment on appeal unless the court finds that the
error complained of amounted to such a denial of the rights of the appellant as was
reasonably calculated to cause and probably did cause the rendition of an improper
judgment. In other words, we are to determine if the trial court's errors denied
appellant a fair trial."). 

 In G.M.P., the defendant was prevented from putting on evidence of his good
reputation for the safe and moral treatment of children. Id. at 211. The State argued
that this error was harmless because the witness testified before the jury that she was
comfortable allowing her 15-year-old son to be alone with the appellant. Id. The
court noted that the purpose of allowing reputation evidence is to establish that it is
improbable that the accused committed the crime. Id. The court concluded that, under
the civil standard for harmless error, which is similar to that for nonconstitutional error
in a criminal case, the defendant had been harmed by the exclusion of reputation
evidence because the evidence that was permitted was "not the same caliber of
evidence as reputation etestimony." Id.

 In Moody v. State, the defendant, who was charged with indecency with a child,
was not permitted to put on "good character evidence" of his reputation for the ethical
treatment of children. Nos. 01-05-00395-CR, 01-05-00396-CR, 01-05-00397-CR, 01-05-00398-CR, 2006 WL 3230204 (Tex. App.--Houston [1st Dist.] Nov. 9, 2006, no
pet.) (not designated for publication). This Court held that the trial court erred in
refusing to permit the "good character" evidence, and that such error was harmful. Id.
at *3-4. We noted that there were only two witnesses to the alleged indecent acts, no
physical evidence, and no alibi evidence. Id. at *5. Because the excluded evidence
went to the heart of the defendant's sole defense, we could not say with fair assurance
that the jury would not have been influenced had it been allowed to hear evidence that
appellant had a reputation in his community for treating children ethically or morally. 
Id.

 In this case, the evidence presented two opposing versions of the events. 
Appellant, Martinez, and Velasquez testified that Amaya got into his car voluntarily
so that they could drive to the bank to get the money that Amaya owed appellant. 
When Amaya mentioned that the bank might be closed, he asked appellant to drop him
at the McDonald's, which appellant did. However, Amaya testified that he was forced
into appellant's car at gunpoint, and, after being threatened with being shot if he did
not repay the debt, was forcibly thrown out of the car at McDonald's. The excluded
evidence in this case went to the heart of appellant's sole defense--that, in light of the
opinions given by his business associates regarding his honesty, truthfulness, and lack
of violence, it was unlikely that appellant would kidnap someone in an effort to collect
a debt. We cannot say with fair assurance that the jury would not have been
influenced had it been allowed to hear evidence that five of appellant's business
associates considered him an honest, truthful, non-violent person.

 Accordingly, we sustain point of error one.










CONCLUSION

 Having sustained appellant's first point of error regarding the exclusion of
character evidence, we reverse the judgment of the trial court and remand for further
proceedings. Because the remaining points of error would entitle appellant to no more
relief than that we have already ordered, we need not address appellant's remaining
points and decline to do so. We overrule all pending motions.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Publish. Tex. R. App. P. 47.2(b).
1. 
" ' ' 
 ' "