**Ex parte Michael Allen RABORN.**

**Ex parte Michael Dan WETZEL.**

**Nos. 69123, 69124.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 26, 1983.

---

Allan K. Butcher, Fort Worth, for appellants.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These proceedings involve post-conviction applications for writs of habeas corpus under Article 11.07, V.A.C.C.P.

At the trial for burglary of a habitation the jury convicted and assessed each applicant's punishment at twenty (20) years' imprisonment. In their habeas applications the applicants allege that they were denied effective assistance of counsel *at trial*.[1] In those applications it was alleged that trial counsel did not make an independent investigation of the facts of the case and did not take an active role in the preparation of the defense of the applicants. The applicants also alleged that the District 7–A Grievance

---

1. It appears that retained trial counsel was retained to handle the appeals. Notice of appeal was given, but counsel failed to pay the court reporter and no statement of facts was filed, no bills of exception were filed and no briefs were filed. The Ft. Worth Court of Appeals affirmed the convictions. Appellants retained a different attorney who filed a motion for rehearing in the said appellate court. That court abated the appeals and directed the trial court to hold a hearing to determine if applicants had been effectively represented on appeal. The trial court found the original attorney's failure to properly pursue the appeal was without applicants' knowledge and consent. The Court of Appeals ordered an extension of time in order to allow the applicants to pursue their appellate remedies. The transcription of the court reporter's notes were obtained and filed, but thereafter the applicants gave written notice of their desire to withdraw their appeals. Their requests were granted on September 8, 1982. Applicants forewent any chance to raise the question of ineffective assistance of counsel at trial on direct appeal.

Committee of the State Bar of Texas had suspended the trial attorney from the practice of law for a period of six months because he had accepted a fee to represent applicants and then spent an inadequate amount of time to present the lawful objections of his clients.

Several affidavits were filed in connection with the applications including one by the trial counsel who confessed that he had failed to interview the State's witnesses, inspect the physical evidence, make proper explanation of the law to the applicants, etc., and had thus deprived them of the effective assistance of counsel.

After an evidentiary hearing in which trial counsel testified and adopted his affidavit, the court found that there had been effective assistance of counsel at trial. The record was forwarded to this court.

These proceedings were then filed and set. One of the reasons for such action was to determine what effect a finding of professional misconduct in a criminal case by a State Bar Grievance Committee has on a subsequent habeas corpus proceeding.

■ After further examination of the record and research, we find that the action of the District 7–A Grievance Committee concerning the attorney here involved was based in part on matters other than the question of effective assistance of counsel at trial. See Texas Bar Journal, Vol. 45, No. 9, p. 1282 (October, 1982). See also finding No. 8 of the trial judge in the instant post-conviction habeas corpus proceedings after evidentiary hearing. A finding of professional misconduct based on other matters as well as actions of counsel at trial should have no bearing on a subsequent Article 11.07, V.A.C.C.P., proceedings alleging solely the ineffective assistance of counsel *at trial.* We decline to discuss such matter as an abstract subject.

Looking at the other facts, we noted that the trial attorney, although with sixteen years of experience in the practice of criminal law, did not talk to the State's witnesses[2] or visit the scene of the crime, etc. He talked to the prosecutors, but never inspected the physical items of evidence found in an automobile at the time of arrest of the applicants. He assumed they were such common items they could not be identified by the owners.[3] The State offered to recommend eight years' probation and a $1,000.00 fine as punishment if the applicants entered guilty pleas. It appears counsel told applicant Raborn's brother of the offer, but the evidence is conflicting as to whether he ever informed the applicants personally of the offer. He never evaluated the offer for the applicants in light of the facts of the case. The law relating to the unexplained possession of recently stolen property was not made known to the applicants. Counsel appears to have told the brother of applicant Raborn the State had no evidence or witnesses to implicate either applicant. At trial the State's witnesses were able to identify and place the applicants at or near the scene of the alleged offense, and were able to identify the property found in the possession of the applicants.[4] After the State's evidence was presented, applicants told counsel of their alibi, a defense which counsel had not discussed with them. Alibi witnesses had to be hastily summoned. Counsel interviewed these witnesses in a group for about five minutes. Counsel had not previously interviewed these witnesses. In the midst of trial the State offered to recommend as punishment 10 years' imprisonment if the applicants pled guilty. Counsel advised applicants they "could hardly do worse" if the trial proceeded. It did and the jury assessed each applicant a penalty of 20 years' imprisonment.

2. Trial counsel learned the name of the State's witnesses and that some of the witnesses could place the applicants at or near the scene of the alleged burglary. It was stipulated that none of the State's witnesses were interviewed.

3. Trial counsel knew the prosecution had some Texas Instruments watches, which are very common. The watches in question had a cracked crystal on one and a personalized band on the other.

4. The affidavit of counsel in the record suggests he was unaware of much of this testimony.

■ Counsel was retained by applicant Raborn's brother. It is now established that the standard for both appointed and retained counsel is the "reasonably effective assistance of counsel," meaning "counsel reasonably likely to render and rendering effective assistance." *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980). In applying this standard, the adequacy of an attorney's services on behalf of an accused must be gauged by the totality of the representation. *Romo v. State*, 631 S.W.2d 504 (Tex. Cr.App.1982); *Johnson v. State*, 629 S.W.2d 731 (Tex.Cr.App.1981); *Passmore v. State*, 617 S.W.2d 682 (Tex.Cr.App.1981); *Archie v. State*, 615 S.W.2d 762 (Tex.Cr.App.1981); *Williams v. State*, 549 S.W.2d 183 (Tex.Cr. App.1977). Thus, it is the totality of the representation, rather than isolated acts or omissions, as the proper basis for inquiry in regard to whether there has been a denial of effective assistance of counsel. *Boles v. State*, 598 S.W.2d 274 (Tex.Cr.App.1974). In this connection any claim of ineffective assistance of counsel must be determined upon the particular circumstances of each individual case. *Benoit v. State*, 561 S.W.2d 810 (Tex.Cr.App.1977).

■ It appears that most of the omissions attributed to trial counsel arose from his failure to conduct an independent factual investigation. This is an essential element of the standard of effective assistance of counsel as applied by this court. See *Ex parte Duffy*, supra. The State attempted to show counsel discussed the case with the prosecutor, but reliance upon such conversations and discussions for all information is no substitute for an independent investigation of the facts, particularly when there was no effort to examine physical evidence or to talk to the State's witnesses.

Further, counsel did not evaluate the State's offer of probation for the applicants, and indeed because of his failure to investigate and to prepare for trial he was not in a position to do so.

■ Considering the particular circumstances of the case, and the totality of the representation and the standard to be applied, we conclude that applicants did not have the effective assistance of counsel at trial.

The judgment of conviction in Trial Court Cause Nos. 26,093 and 26,094 is vacated and set aside. Each applicant is remanded to the custody of the Sheriff of Parker County to answer the indictment, and the clerk of this court is directed to forward a copy of this opinion to the Texas Department of Corrections.

It is so ordered.

CLINTON, Judge, concurring.

As the Court points out, one reason we ordered these matters filed and set was in order to consider what bearing, if any, a finding of professional misconduct in representing clients may have in a subsequent postconviction habeas corpus proceeding brought by them pursuant to Article 11.07, V.A.C.C.P. alleging ineffective assistance of counsel. My purpose is to demonstrate why it should have none—generally and in this cause.

Constitutional underpinnings support due process principles that every accused who asserts the right to an attorney is entitled to "the guiding hand of counsel at every step in the proceedings against him"—counsel "giving of effective aid in the preparation and trial of the case," *Powell v. Alabama*, 287 U.S. 45 at 68–71, 53 S.Ct. 55, at 64–65, 77 L.Ed. 158 at 170–172 (1932); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Ex parte Duffy*, 607 S.W.2d 507, at 513–516 (Tex.Cr.App.1980). This Court continues to use "the standard of 'reasonably effective assistance of counsel' to test adequacy of representation afforded an accused," *Ex parte Duffy*, supra, at 516. That is, "counsel reasonably likely to render and rendering reasonably effective assistance," *McKenna v. Ellis*, 280 F.2d 592 (CA5 1961) as quoted approvingly by the Court in *Caraway v. State*, 417 S.W.2d 159, 162 (Tex.Cr.App.1967), and reaffirmed in *Ex parte Duffy*, supra, at 514, n. 14, and at 516, n. 17. The standard is applied to the totality of representation afforded the client by trial counsel in the case at hand,

*Passmore v. State,* 617 S.W.2d 682 (Tex.Cr. App.1981); *Sanchez v. State,* 589 S.W.2d 422, 424 (Tex.Cr.App.1979); *Cude v. State,* 588 S.W.2d 895, 896 (Tex.Cr.App.1979), but the "impact" of grievous defaults may make it apparent that an accused did not receive effective assistance of counsel, *Weathersby v. State,* 627 S.W.2d 729, 730 (Tex.Cr.App.1982) and *Cude v. State,* supra, at 896. In all of this the goal is to secure and protect due process rights of an accused to a fair trial through aid and assistance of reasonably competent counsel.

On the other hand, the duty of a district grievance committee is "to receive complaints of professional misconduct alleged to have been committed by an attorney ...," Title 14 App., Article 12, § 11. "Professional misconduct" is misconduct that is specified in DR 1–102, Code of Professional Responsibility,[1] and barratry.[2] Upon receiving a complaint a grievance committee "shall make such investigation ... as it may deem appropriate under the circumstances," including hearing testimony it "may require ... to be given under oath," *id.,* § 12. Concluding its investigation, a committee has a number of options available, *id.,* § 16, one of which is to suspend the license of the offending attorney for a period not to exceed three years, § 16(c); however, actual suspension by a committee may not be imposed without written consent of the accused, *Munson v. State,* 576 S.W.2d 440 (Tex.Civ.App.—Austin 1978) writ ref'd

n.r.e. (In the case at bar trial counsel for applicants confirmed that his was "an agreed suspension.") Suspension of an attorney is reflected by a judgment entered by a committee upon agreement of the offender. See generally, *Galindo v. State,* 535 S.W.2d 923 (Tex.Civ.App.—Corpus Christi 1976) no writ history.

As originally enacted, the State Bar Act, Article 320a–1, V.A.C.S.,[3] had as its purpose the regulation of the practice of law, its design being "to protect the public by eliminating from the legal profession those attorneys morally unfit to enjoy its privileges," *Galindo v. State,* supra, at 925. It has been said that a grievance committee is an administrative agency of the Judicial Department, the arm of the Supreme Court in discharging its professional policing duties. *State v. Sewell,* 487 S.W.2d 716, 719 (Tex. 1972); *Galindo v. State,* supra, at 925. While an agreed judgment entered by a committee may have "the force and effect of a judgment of the District Court of the county of the residence of the accused," Article 12, § 16(c), the extent of its power seems to be to cause the Clerk of the Supreme Court to strike the name of the attorney from the rolls for the period of suspension, *ibid.* That done, the judgment becomes *functus officio*—not much more than a record of historical fact.[4]

All things considered, it is my best judgment that an ultimate finding by a griev-

---

1. DR 1–102 Misconduct:
    (A) A lawyer shall not:
        (1) Violate a Disciplinary Rule.
        (2) Circumvent a Disciplinary Rule through actions of another.
        (3) Engage in illegal conduct involving moral turpitude.
        (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
        (5) Engage in conduct that is prejudicial to the administration of justice.
        (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

2. V.T.C.A. Penal Code, § 38.12.

3. Well aware that the State Bar Act was substantially amended by Acts 1979, 66th Leg., ch. 510, p. 1081, effective June 11, 1979, and that on June 19, 1979 the Supreme Court of Texas

promulgated an Order, also effective June 11, 1979, we do not at all undertake to interpret and construe Article 320a–1, as thus revised, or the June 19 Order. In this opinion we are treating a grievance committee and its procedures in a general way, and it is not to be considered as an expression of views regarding Article 320a–1, as revised, or the June 19 Order of the Supreme Court.

4. Article 320a–1, § 13(b) provides: "Committee records are confidential and are not subject to the open records law.... The final action of a committee resulting in a vote to ... suspend ... shall be made public.... All records shall be forwarded to the general counsel and he shall maintain a permanent record of such actions, which will be public records for statistical purposes but which are subject to the provisions above concerning privacy."

ance committee of professional misconduct in representing his clients has no bearing on the ultimate issue of failure to render effective assistance of counsel raised in a post-conviction habeas corpus proceeding pursuant to Article 11.07. In the instant cases all we know from the record about the content of the judgment entered by the District 7–A Grievance Committee is what was published in the October 1982 State Bar Journal, and the skimpy testimony of trial counsel to the effect that there was a finding that in representing applicants he failed to spend sufficient time adequately to prepare their cases for trial. Quite aside from that finding by the committee counsel admits that and more. Accordingly, the Court properly gives no weight at all to the reported abstract of judgment of the committee and testimony of counsel concerning its content.

Therefore, I concur in the order of the Court.