**Timothy Menno RAMER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–01095–CR.**

Court of Appeals of Texas, Dallas.

May 30, 1986.

Emmett Colvin, Dallas, for appellant.

Elizabeth L. Phifer, Dallas, for appellee.

Before WHITHAM, McCLUNG and McCRAW, JJ.

McCLUNG, Justice.

Appellant appeals a conviction for burglary. After a bench trial, the court assessed punishment at ten years' confinement. Appellant contends that he was denied effective assistance of counsel and that the evidence is insufficient to establish that appellant committed the burglary with the intent to commit rape or theft. We find no merit in these contentions, and accordingly, we affirm.

The offense occurred at approximately 3:20 a.m. on June 27, 1984. The complainant awoke in her apartment to find a man, dressed in a red T-shirt, green cap, jeans, and workboots, standing in the doorway to her bedroom. Complainant testified that she recognized the man as one she had seen before around the apartment complex. She started yelling, and the man ran toward her. She noticed that his pants were unzipped and open to the extent that she could see a good deal of his underwear. The man climbed on top of her, started choking her, and told her to be quiet or he would kill her. She fought him and managed to get his hand from her mouth. When she began screaming again, the man ran out the front door of the apartment. Later, the complainant found a package of Marlboro 100 cigarettes in the apartment.

She testified that neither she nor her roommate smoked this brand of cigarettes. The next day complainant picked appellant out of a lineup of five or six people. Appellant was arrested that same day.

A security guard for the apartment complex testified that at 10:30 p.m. the night of the burglary, he met appellant while on patrol and talked with him for about five minutes. During the conversation, appellant dropped a Dr. Pepper can and a package of Marlboro 100's. Appellant was wearing blue jeans, a T-shirt, and a baseball cap. Later that night, around 3:00 a.m., the security guard saw appellant pull up in his car, get out, and jump over the fence surrounding complainant's apartment. Shortly thereafter, he saw appellant get in his car and drive off.

Appellant raised the defense of alibi. Appellant testified in his own behalf. He denied breaking into the complainant's apartment. He admitted that he was at the apartment complex around 11:30 p.m. the night of the burglary and that he talked to the security guard. He testified that he then went to a bar on Greenville Avenue. At the request of the club's disc jockey, he gave one of the dancers a ride home. They left the club between 2:30 and 2:45 a.m. and arrived at the dancer's house around 3:20 a.m. Appellant did not leave from there until 3:45 a.m. and arrived home about 4:30 a.m. Appellant testified that he was wearing workboots, a blue T-shirt, and a gray baseball cap. Appellant also testified that he smoked Marlboro cigarettes and that it was his habit, when he opened a pack, to turn one cigarette upside down in the pack for luck. He noted that the cigarette pack found in complainant's apartment did not have a cigarette turned upside down while the pack taken from him in the courtroom did.

On cross-examination, appellant testified that he informed his trial counsel that in his car was a slip of paper with the dancer's name and phone number on it, which would help establish his alibi.

Appellant's girlfriend testified that the night following the burglary, she and ap-

pellant's trial counsel went to the complainant's apartment. There, they interviewed the complainant and reenacted the alleged crime in order to determine whether the assailant could have been readily identified by the complainant. They also checked a boot print at the fence outside the apartment. This print had tracks on the sole. The girlfriend testified that appellant's boot soles were smooth. She also corroborated appellant's superstitious habit concerning the opening of cigarette packs.

The dancer, on direct examination, corroborated appellant's testimony that he had taken her home from the club. On cross-examination, however, she could not remember the exact day when that occurred. On redirect she testified that she was positive that appellant took her home the night before he was arrested.

The disc jockey, after being subpoenaed, testified that he had asked appellant to take the dancer home. However, on cross-examination, he also was unsure of which night of the week that was.

The State argued to the court that the two alibi witnesses, the dancer and the disc jockey, did not establish an alibi because they could not pinpoint the exact day when appellant took the dancer home. In pronouncing guilt, the trial judge stated that he agreed with the State that from their testimony it was difficult to determine whether appellant took the dancer home the same night as the burglary.

To successfully advance an ineffective assistance claim, appellant must meet a two-pronged test:

[He] must first show that counsel's performance was deficient, i.e., that his assistance was not "reasonably effective." Second, and assuming the defendant has first shown ineffective assistance, the defendant must affirmatively show prejudice. That is, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Ingham v. State,* 679 S.W.2d 503, 508–09 (Tex.Crim.App.1984) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ); *see Butler v. State,* 716 S.W.2d 48 (Tex.Crim.App.1986). The right to effective assistance of counsel merely ensures the right to reasonably effective assistance. *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980). The adequacy of counsel's service on behalf of an accused must be gauged by the totality of the representation. *Ex parte Raborn,* 658 S.W.2d 602, 605 (Tex.Crim.App.1983). Thus the constitutional right to effective counsel does not mean errorless counsel. *Jackson v. State,* No. 115–84 (Tex.Crim. App., July 24, 1985) (not yet reported); *Ex parte Robinson,* 639 S.W.2d 953, 954 (Tex. Crim.App.1982). In assessing counsel's performance, every effort must be made to eliminate the distorting effects of hindsight. *Saylor v. State,* 660 S.W.2d 822, 824 (Tex. Crim.App.1983). The appellant must overcome the presumption that under the circumstances the challenged action "might be considered sound trial strategy." *Strickland,* 104 S.Ct. at 2065–66; *Stenson v. State,* 695 S.W.2d 569, 571 (Tex.App.—Dallas 1984, no pet.).

■ Appellant contends that he was denied effective assistance because counsel failed to advise appellant of the significance of waiving trial by jury. The record developed at the hearing on appellant's motion for new trial reflects that counsel was retained immediately after appellant was arrested and that it took almost a year before the case came to trial. The case was originally set for jury trial. After the trial was put off several times, however, appellant indicated to counsel that he was tired of waiting and requested that his case be heard by the court. Counsel agreed without telling appellant the ramifications of that choice.

The criminal defense lawyer controls the progress of a case, while the client confronts only three personal decisions: (1) his plea to the charge; (2) whether to be tried

by a jury; and (3) whether to testify on his own behalf. *Jackson,* slip op. at 47. Counsel's performance is deficient if he fails to give competent advice, thus preventing appellant from making an informed and conscious choice regarding his right to jury trial. *See Jackson,* slip op. at 49; *Ex parte Dunham,* 650 S.W.2d 825, 827 (Tex.Crim. App.1983).

We fail to see, however, that appellant has shown a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Appellant argues that a jury would have been more sympathetic to an alibi defense than a judge. This is mere speculation and is not a sufficient showing of affirmative prejudice. *Cf. Jackson,* slip op. at 49–50 (affirmative prejudice shown because appellant's ill-informed choice of jury sentencing on retrial after remand resulted in a sentence ten years greater than he could have received had he chosen the court to assess punishment).

Appellant also contends that he was denied effective assistance because counsel failed to prove what counsel himself called an "air tight" alibi defense. Specifically, appellant complains that counsel erred in not introducing into evidence the slip of paper with the dancer's name and address on it; in putting the disc jockey on the stand when counsel knew that he might be a reluctant witness; in not preparing the dancer adequately for trial so that she could testify unequivocally; in using appellant's girlfriend rather than an expert to testify about the re-enactment of the crime; and in generally conducting the defense in such a twisted, convoluted manner as to fail to convince the judge of the alibi.

Our review of the record reveals that trial counsel investigated the crime scene and interviewed the complainant the same day he was retained, attempted to obtain a no-bill from the grand jury, filed pretrial motions and obtained rulings thereon, procured and adequately examined the defense witnesses, extensively cross-examined the State's witnesses, obtained favorable rulings on several objections at trial, and made an effective closing argument. Furthermore, the maximum punishment appellant could have received was 99 years or life with a $10,000 fine. Appellant received a ten-year sentence. We conclude that looking at the totality of counsel's representation, appellant received "reasonably effective assistance of counsel" under both the United States Constitution and the Texas Constitution.

Appellant contends that the evidence is insufficient to show that he committed the offense with the intent to commit rape or theft. We disagree.

The standard for reviewing the sufficiency of the evidence for conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979); *Dickey v. State,* 693 S.W.2d 386, 387 (Tex.Crim.App. 1984).

Appellant argues that while the State may have proved an intent to kill, it did not prove an intent to commit theft or rape. The evidence viewed most favorably to the prosecution shows that appellant broke into complainant's apartment in the middle of the night. He jumped on top of complainant, who was in bed. Appellant's zipper was open such that his underwear was visible. He threatened to kill complainant if she did not stop screaming. Appellant fled only after complainant managed to break free and resume screaming. We hold that this evidence is sufficient so that any reasonable trier of fact could find beyond a reasonable doubt that appellant committed burglary with an intent to rape.

The trial court's judgment is affirmed.