**Everett Charles SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–99–159–CR.**

Court of Appeals of Texas,
Waco.

Aug. 15, 2001.

Discretionary Review Refused
Dec. 19, 2001.

Walter M. Reaves, Jr., West, for appellant.

John W. Segrest, McLennan County Criminal District Attorney, Waco, for appellee.

Before Chief Justice DAVIS, and Justices VANCE and GRAY.

## OPINION

GRAY, Justice.

A jury convicted Everett Charles Scott of sexual assault of a child younger than seventeen years of age and sentenced him to twenty years in prison. In two points of error, Scott claims that (1) the court erred in admitting extraneous offense evidence at the punishment phase over his objections that the State had not provided timely notice of its intent to introduce this evidence, and (2) defense counsel was ineffective.

## BACKGROUND

Scott was indicted in four cases—in this case for one act of sexual assault, in two additional sexual assault cases involving other children under the age of seventeen, and in a possession of marijuana case. The court appointed the same attorney to represent Scott in all four cases. The clerk's record in this case includes a Request for Notice of Intent to Offer Extraneous Conduct Under Rule 404(b) and Evidence of an Extraneous Crime or Bad Act Under Article 37.07, which was filed by the court-appointed attorney on May 7, 1998. The certificate of service indicates that the request was delivered to the McLennan County District Attorney's office.

On January 22, 1999, the court allowed Scott to retain his own counsel to represent him in all four cases. While it is not clear from the record whether all three sexual assault cases were to be tried together, it is certain that all three cases were to be addressed at the same pretrial hearing. The court, however, took up pretrial matters in this case and only one other sexual assault case. At the pretrial hearing, the State indicated that information from the third case could be offered in its prosecution of the other two cases. At trial, ten days later, the State proceeded with this case alone.

At the pretrial hearing, defense counsel notified the court that the State had not been aware of the defense's request for notice as required by Rule 404(b) and Article 37.07. The State confirmed this. Six days before trial, the State faxed a notice to the defense. The next day, the State faxed a second notice. In all, the State presented twenty-two extraneous offenses that it intended to introduce at trial. This list included (1) six acts or offenses that

were not included in the indictment, but that involved the victim in this case; (2) eleven acts or offenses that involved the victims in the other two sexual assault cases, which had initially been scheduled for pretrial with this case; (3) the indictment for possession of marijuana; (4) three misdemeanor convictions for driving while intoxicated; and (5) a misdemeanor conviction for driving without a license.

Prior to the guilt-innocence phase of the trial, defense counsel objected that the State had not provided timely notice of its intent to introduce extraneous offenses. The court allowed the State to ask the victim about only the extraneous offenses that involved him.[1] The State agreed to obtain a ruling from the court out of the presence of the jury prior to the introduction of any other extraneous offense during this phase of the trial.

On direct examination during the guilt-innocence phase, the defense asked Scott's grandson if Scott was "the kind of man that would get involved with young men, like these allegations are . . . accusing him of?" The witness replied, "No, sir." Over counsel's objection, the court granted the State's request to offer rebuttal testimony regarding the other sexual assaults that Scott was alleged to have committed. Rather than have the other two sexual assault victims testify at this stage of the trial, counsel agreed to stipulate that these two young men would testify that they were familiar with Scott's character for getting involved with young men because they were the complaining witnesses in two additional causes against Scott. On two occasions outside the presence of the jury, counsel indicated to the court that this stipulation was part of his trial strate-

---

1. The court ruled that same transaction evidence and victim testimony about all sexual activity between the victim and the defendant were admissible under Tex.R. Evid. 404(b) and Tex.Code Crim. Proc. Ann. art. 38.37, respectively.

gy. Scott also testified that he was satisfied with counsel's work on his behalf.

Before the punishment phase of the trial, defense counsel again objected to the timeliness of the State's notice of intent to introduce evidence of extraneous offenses. The court overruled this objection. The State offered evidence of several extraneous offenses during the punishment phase including: (1) testimony of the other two victims regarding several incidents of sexual assault; (2) testimony of a police officer regarding the possession of marijuana charge; and (3) evidence of Scott's three misdemeanor convictions for driving while intoxicated, in the form of judgments and sentences.

On the same day that the court entered its Judgment on Jury Verdict of Guilty, the court appointed Scott's appellate counsel. Scott did not file a motion for new trial.

## EXTRANEOUS OFFENSE EVIDENCE

Scott complains that the court erred in admitting extraneous offense evidence at the punishment phase over his objections because six days to prepare for the State's introduction of twenty-two extraneous offenses was not reasonable. Considering the circumstances of this particular case, we cannot agree.

### Notice Requirements

The Texas Code of Criminal Procedure permits the court within its discretion to admit evidence of the defendant's character at the punishment phase of the trial. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a). However, if the defendant makes a timely request, the State must provide "reasonable notice ... in advance of trial" of its intent to introduce evidence of extraneous conduct. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g); TEX.R. EVID. 404(b).

Not surprisingly, courts cannot agree on what constitutes a sufficient amount of time to be "reasonable." We have stated that notice provided ten days before trial will be presumptively reasonable. *Chimney v. State*, 6 S.W.3d 681, 694 (Tex.App.—Waco 1999, no pet.). We have also stated that three days' notice over a weekend is presumptively unreasonable. *Hernandez v. State*, 914 S.W.2d 226, 234 (Tex.App.—Waco 1996, no pet.). The timing of the defendant's request, however, can have some bearing on the reasonableness of the timing of the State's notice. For example, five days' notice was determined reasonable when the defendant had made his request only two weeks earlier. *See Self v. State*, 860 S.W.2d 261, 264 (Tex.App.—Fort Worth 1993, pet. ref'd).

In reality, "reasonable notice" depends upon the facts and circumstances of each individual case. *Webb v. State*, 36 S.W.3d 164, 178 (Tex.App.—Houston [14th Dist.] 2000, pet. filed). Therefore, courts have examined factors other than the actual time frame to determine whether notice was reasonable. Some, like the *Self* court, have focused on the defense. In *Self*, the court held that because defense counsel was able to cross-examine witnesses about the specifics of the extraneous acts, there was no surprise and, therefore, notice of the State's intent to introduce evidence of these acts was adequate. *Self*, 860 S.W.2d 261, 264. We agreed with the *Self* court when we stated that the purpose of reasonable notice is "to allow the defendant adequate time to prepare for the State's introduction of the extraneous offenses at trial." *Hernandez*, 914 S.W.2d at 234.

### Standard of Review

We review the trial court's decision to admit extraneous offense evidence during the punishment phase of a trial with the abuse of discretion standard.

*Mitchell v. State,* 931 S.W.2d 950, 953 (Tex.Crim.App.1996). In determining the threshold issue of admissibility of this evidence, the trial court must consider the reasonableness of the State's notice. Ultimately, the determination of reasonableness of the notice is committed to the sound discretion of the court. A determination that is within the zone of reasonable disagreement does not constitute an abuse of discretion. *Sebalt v. State,* 28 S.W.3d 819, 822 (Tex.App.—Corpus Christi 2000, no pet. h.). In the absence of reasonable notice, however, a trial court's decision to admit evidence of an extraneous offense constitutes an abuse of discretion. *See Henderson v. State,* 29 S.W.3d 616, 625 (Tex.App.—Houston [1st Dist.] 2000, no pet.); *Webb v. State,* 36 S.W.3d 164, 179 (Tex.App.—Houston [14th Dist.] 2000, pet. filed).

**Application**

Although Scott's request for notice was filed with the court more than a year before trial, the record indicates that the State was not aware of Scott's request until shortly before the pretrial hearing. When Scott brought this to the court's attention at the pretrial hearing, he announced that the State had agreed to provide him with notice within four days. Counsel made no complaint regarding inadequate notice at that time.

When the court overruled Scott's objection to the timeliness of the State's notice prior to the punishment phase of the trial, it could have reasonably determined that Scott was not deprived of adequate preparation time. Scott does not complain that he was surprised by evidence admitted at the guilt-innocence phase, and, based upon

the particular circumstances of this case, he should not have been surprised by the evidence presented at the punishment phase.

*Evidence regarding the other sexual assault cases*

■ Over four months before the trial, defense counsel had been retained to represent Scott in this case and the two other sexual assault cases. These three cases were originally set for pretrial together; therefore, the offenses associated with the other two children were not "extraneous" until approximately ten days before the trial when the State decided not to pursue prosecution of them as part of their primary case. While it is true that counsel might not have known everything that his client knew, absent some other indication in the record, it would be unreasonable to assume that he was not prepared to defend against all three sexual assault cases at the pretrial hearing.

Of the twenty-two extraneous offenses[2] listed in the State's notice, eleven involved these two additional cases. The evidence that the State intended to present included various sexual acts between Scott and each of the two boys, as well as evidence that Scott provided beer, cigarettes, alcohol, and drugs to them and that he had paid them money. During the guilt-innocence phase of trial, defense counsel negotiated with the State about avoiding the testimony of the two boys and stipulated to four of the sexual acts. Therefore, it cannot be concluded that counsel was surprised by the actual testimony about these same acts at the punishment phase. The boys testified to only three of the other listed offenses. One boy testified that Scott had provided beer on the date that two of the sexual acts occurred. The other testified

---

**2.** Scott simply claims that the court erred in admitting "evidence of extraneous offenses" during the punishment phase of the trial. He does not address these objectionable offenses individually. Likewise, we address the twenty-two offenses in general terms but attempt to group them in some logical manner.

that Scott gave him marijuana and money on the same day that a sexual act occurred. Although defense counsel did not cross-examine either of the boys regarding these seven offenses, Scott does not claim that counsel was hindered in his cross-examination because of surprise or lack of preparation. On this record, we must assume that counsel chose not to pursue these issues.

*Evidence regarding the victim*

The State's notice also included six other offenses that involved the victim in this case. These included the sexual activity between Scott and the victim over a two-year period, as well as Scott's provision of marijuana to the victim on the same day as the sexual act for which Scott was indicted. These same six offenses were included in the State's Notices of Intent to Offer Extraneous Conduct Under Article 38.37,[3] which were delivered to Scott's attorney along with the notices pursuant to Rule 404(b) and Article 37.07. Prior to the guilt-innocence phase, counsel objected to the timeliness of these notices. The court overruled the objection. Therefore, counsel had to defend against evidence of these offenses during the guilt-innocence phase of the trial. Scott does not now complain that the notice regarding these six offenses was inadequate prior to the guilt-innocence phase of the trial. We find it difficult to understand why notice was inadequate for use of these offenses during the punishment phase, especially when we consider that the victim did not testify at the punishment hearing.

*Evidence regarding the four misdemeanor convictions and the drug indictment*

This leaves five offenses, which include the indictment for the state jail offense of

possession of marijuana, three misdemeanor convictions for driving while intoxicated and a misdemeanor conviction for driving without a license. Counsel had been retained to defend Scott in the possession of marijuana case, so it is logical to assume that counsel had some working knowledge of the circumstances surrounding this offense. When the State offered "approximately fourteen ounces" of marijuana as evidence during the punishment phase, defense counsel conducted a voir dire examination of the State's witness regarding the chain of custody in delivering evidence to the Department of Public Safety Laboratory for analysis. He then stated that he had no objection. When the State offered the lab's report into evidence, counsel stated that he was familiar with the analysis and noted that it showed that the marijuana weighed 13.59 ounces rather than fourteen. He again stated that he had no objection. Furthermore, counsel was able to cross-examine the police officer regarding the association of the marijuana with Scott. Under the *Self* standard, counsel does not appear to have been inadequately prepared to address this offense.

During the punishment phase, the State offered evidence of Scott's three misdemeanor convictions for driving while intoxicated by introducing court documents reflecting each judgment and sentence. The State did not offer any evidence of the misdemeanor conviction for driving without a license. Counsel advised the court that he had "previously read thoroughly these documents" and that he had no objection to their admission into evidence. Under these circumstances, we find it diffi-

---

**3.** Article 38.37 provides in relevant part that evidence of other crimes, wrongs, or acts committed against a child under seventeen years of age shall be admitted to demonstrate the previous and subsequent relationship be-

tween the defendant and the child. On timely request by the defendant, the State shall give the defendant notice of intent to introduce such evidence in the case in chief. Tex.Code Crim. Proc. Ann., art. 38.37.

cult to find that counsel was surprised or disadvantaged because of lack of preparation time.

Although notice of the state's intent to offer the offenses may have been received only six days before trial, under the unique facts presented, we cannot say that the trial court abused its discretion in finding that notice was reasonable. Therefore, we overrule Scott's first issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Scott complains that he was denied his constitutional right to effective assistance of counsel. We disagree.

### Standard of Review

■ In assessing the effectiveness of counsel, whether in the guilt/innocence or punishment phase, we apply the test set forth by the Supreme Court in *Strickland v. Washington*. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim.App. 1999); *Ex parte Jarrett*, 891 S.W.2d 935, 938 (Tex.Crim.App.1994). *Strickland* requires us to determine whether:

(1) counsel's performance was deficient; and if so,

(2) whether there is a reasonable probability the results would have been different but for counsel's deficient performance.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

■ "Consideration of the 'totality of the representation,' rather than isolated acts or omissions of trial counsel, determines whether this standard has been met." *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App.1993) (quoting *Ex parte Raborn*, 658 S.W.2d 602, 605 (Tex.Crim. App.1983)); *accord Ferguson v. State*, 639 S.W.2d 307, 310 (Tex.Crim.App. [Panel Op.] 1982). We strongly presume that counsel's conduct lies within the "wide range of reasonable representation." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). Ineffective assistance of counsel is not an allegation that should be made lightly. *Estes v. State*, 985 S.W.2d 684, 685 (Tex.App.—Fort Worth 1999, pet. ref'd). An appellant bears a "tremendous burden" in proving ineffective assistance of counsel. *Shilling v. State*, 977 S.W.2d 789, 791 (Tex.App.— Fort Worth 1998, pet. ref'd). "The accused must overcome this presumption by affirmatively showing that his representation fails the two-part test set forth in *Strickland*." *Pena–Mota v. State*, 986 S.W.2d 341, 344 (Tex.App.—Waco 1999, no pet.).

■ Generally, we examine the totality of the representation in gauging the effectiveness of counsel. *Raborn*, 658 S.W.2d at 605. In some situations however, a single omission on counsel's part can be considered ineffective assistance. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim.App.1991); *Pena–Mota v. State*, 986 S.W.2d at 344. Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Beheler v. State*, 3 S.W.3d 182, 185 (Tex.App.—Fort Worth 1999, pet. ref'd). "Representation is not ineffective simply because, in hindsight, the attorney could have or even should have done something differently." *Godwin v. State*, 899 S.W.2d 387, 391 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd). Allegations of ineffective assistance of counsel must be firmly founded in the record. *Beheler*, 3 S.W.3d at 185–186.

### Application

Scott complains of two specific acts by his attorney. First, he claims that his

counsel "opened the door" to evidence of extraneous offenses by examining Scott's grandson concerning Scott's character. Then, counsel allowed the State to impeach that witness with a stipulation that was beyond the scope of the "open door."

To meet the first requirement of the *Strickland* test, Scott must overcome the strong presumption that counsel's actions constituted sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

### 1. The Open Door

■ Scott does not present any record as to counsel's decision to call Scott's grandson as a witness. As the State points out, counsel's strategy might have been to put favorable testimony of Scott's character from a sympathetic witness before the jury. Nothing in the record before us demonstrates that counsel's questioning of this witness was not sound trial strategy. In hindsight, it might not have worked out as counsel had hoped, but we do not evaluate the effectiveness of counsel based on the distorting effects of hindsight.

### 2. The Stipulation

■ The record shows that counsel made the decision to stipulate to the evidence of Scott's other two sexual assault indictments because he felt that live witnesses would be more harmful to his client than a simple stipulation as to what they would say. Without any evidence in the record to the contrary, we assume that counsel truthfully represented to the court that his decision was part of his trial strategy.

Because the record does not affirmatively demonstrate that counsel's overall performance was deficient, we do not reach the second prong of the *Strickland* test: whether the trial results might have been different but for counsel's deficient performance. We overrule Scott's second issue.

### CONCLUSION

Having overruled both of Scott's issues, we affirm the trial court's judgment.

Justice VANCE concurring.

VANCE, Justice, concurring.

Although I agree to affirm the judgment, I cannot join the majority opinion.

### NOTICE UNDER ARTICLE 37.07

Limited to the facts of this case, I agree that the trial court did not abuse its discretion in finding the notice reasonable. As the majority states, Scott's counsel did not object that the notice would be inadequate when he informed the court before trial that the State had agreed to provide notice "within four days." Furthermore, because the ruling did not come until the beginning of the punishment phase, the court could have taken the time during guilt-innocence into account when it found the notice to be reasonable. I do not agree with the sections entitled "Evidence regarding the other sexual assault cases," "Evidence regarding the victim," or "Evidence regarding the four misdemeanor convictions and the drug indictment." The trial court's ruling should be made in light of circumstances that surround it at the time it is made. The majority uses the hindsight of what happened thereafter to justify the ruling. Because defense counsel in effect agreed to the rather late notice, how well he performed in handling the offenses is immaterial.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Scott's position on appeal is: 1) counsel should never have asked the grandson about Scott's character; and 2) counsel never sought a ruling on the admissibility of the extraneous offenses and should not

have stipulated to indictments alleging those offenses. He contends that, after opening the door to some form of impeachment, counsel's stipulation allowed the State to exceed the scope of impeachment allowed under the rules of evidence. Specifically, he says that the State was not entitled to have the additional "victims" testify that they had been assaulted to impeach the grandson's testimony, so there was no reason to stipulate.

Following *Strickland,* the analysis must begin with the first prong of the two-pronged test: was trial counsel's performance [1] so deficient, because he made errors of such a serious nature, that his assistance fell below an objective standard of reasonableness? *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

Counsel should not have asked the grandson about Scott's character trait. Opening the door with that type of question cannot be considered sound trial strategy. Although the majority says Scott does not present a record of "counsel's decision to call Scott's grandson as a witness," no record is needed to determine that he was called to testify that the complainant, Billy Cornett, had denied the offense prior to trial. So, the ineffectiveness alleged is not in calling the witness but in asking the wrong question.

After he erroneously "opened the door," counsel gave the State more than it was entitled to. Testimony of similar extraneous offenses was not admissible. Thus, counsel's decision to, in effect, agree to assertions that the extraneous offenses had occurred also cannot be justified on the basis of "sound trial strategy."

The genesis of today's interpretation of Rule 404(b) of the Rules of Evidence is found in *Montgomery v. State,* 810 S.W.2d 372, 386–95 (Tex.Crim.App.1990) (on rehearing). Near the beginning of the discussion, the opinion says, "Evidence of 'other crimes, wrongs, or acts' 'may, however, be admissible' if it has relevance *apart from* its tendency 'to prove the character of a person in order to show that he acted in conformity therewith.'" *Id.* at 387 (emphasis in original). Shortly thereafter, the opinion says, "On the other hand, if extraneous offense evidence is not 'relevant' *apart from* supporting an inference of 'character conformity,' it is absolutely inadmissible under Rule 404(b)." *Id.* (emphasis added); *see also Santellan v. State,* 939 S.W.2d 155, 168 (Tex.Crim. App.1997). "For if evidence of 'other crimes, wrongs, or acts' has only character conformity value, the balancing otherwise required by Rule 403 is obviated, the rulemakers having deemed that the probativeness of such evidence is so slight as to be 'substantially outweighed' by the danger of unfair prejudice as a matter of law." *Montgomery,* 810 S.W.2d at 387.

This case is factually similar to *Matthews v. State,* 979 S.W.2d 720 (Tex.App.—Eastland 1998, no pet.). The Eastland court held it was error to allow evidence of an extraneous assault against the defendant's fellow high school student, after the defendant had called character witnesses to testify that the he was a non-violent, peaceable, and truthful person. The state cross-examined the character witnesses to see if they knew about the extraneous assault; they did not. The state attempted to justify the admission of the extraneous-offense evidence "to rebut the impression" left by the defendant that he was a

---

1. Trial counsel is not appellate counsel.

non-violent person who would not commit an assaultive act. In finding error the Court noted that the defendant's character was not an essential element of the charge, claim, or defense under Rule 405.[2] *Id.* at 722; TEX.R. EVID. 405. The complaint on appeal was finally overruled because the Court found that the error in admitting the evidence was harmless. *Matthews,* 979 S.W.2d at 723.

The State was entitled to impeach the grandson with "do you know" questions regarding the offenses against the other victims. Perhaps the majority has confused the rules differentiating between a witness or an accused who testifies and leaves a false impression about his own prior activities, who may be impeached with prior conduct, and a witness who testifies about a character trait of the accused. As our sister court in Houston has stated:

> Under Rule 609, when a witness takes the stand and leaves the false impression of his "trouble" with the police, it is legitimate cross-examination to prove that the witness has been "in trouble" on other occasions. *Ramirez v. State,* 802 S.W.2d 674, 676 (Tex.Crim.App.1990) (quoting *Nelson v. State,* 503 S.W.2d 543, 545 (Tex.Crim.App.1974)) (emphasis added). [footnote omitted]. *See also Prescott v. State,* 744 S.W.2d 128, 130–131 (Tex.Crim.App.1988); *Long v. State,* 820 S.W.2d 888, 895 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) (providing that if the accused is a witness, he may be impeached by prior offenses if he leaves a false impression as to the extent of his prior arrests, convictions, charges,

or trouble with the police). It is when the witness makes a blanket statement concerning his conduct that he "opens the door" and his credibility may be impeached with "mere accusations, or specific acts of misconduct." *Murphy v. State,* 587 S.W.2d 718, 722 (Tex.Crim. App. [Panel Op.] 1979) (emphasis added).

On the other hand, when a witness testifies as to the character of the accused, Rule 405(a) allows "do you know" questions to be asked of the witness to test the basis for his personal opinion. *Reynolds v. State,* 848 S.W.2d 785, 788 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Thomas v. State,* 759 S.W.2d 449, 452 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). [footnote omitted]. Here, by making the statement "My son wouldn't do that," R.P. became a character witness, espousing his opinion about appellant's propensity to commit the crime. *See Hedicke v. State,* 779 S.W.2d 837, 839 (Tex.Crim.App.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990) (stating that personal opinion testimony of a witness who knows the person is one method of proving character).

*Matter of G.M.P.,* 909 S.W.2d 198, 208 (Tex.App.—Houston [14th Dist.] 1995, no writ) (complaint that the trial court erred in allowing the State to cross-examine appellant's father about another accusation leveled against appellant in Arkansas).

The State offered no justification for the admission of the extraneous offenses other than to rebut the grandson's asser-

---

**2.** The rules of evidence allow a person accused of conduct involving moral turpitude to present evidence of pertinent character trait. TEX.R. EVID. 404(a)(1). Such evidence may be offered in the form of reputation testimony. TEX.R. EVID. 405(a). Thus, when such evidence is offered, the question is two-fold: (1) is the evidence that of a pertinent character trait, and (2) is the charged offense conduct involving moral turpitude? *Matter of G.M.P.,* 909 S.W.2d 198, 207 (Tex.App.—Houston [14th Dist.] 1995, no writ) (sexual assault by juvenile; moral turpitude defined).

tion of Scott's character. *See Pavlacka v. State,* 892 S.W.2d 897, 902 (Tex.Crim.App. 1994) (State, as proponent of the evidence, suggested no theory of logical relevance other than character conformity by which rebuttal testimony can be said genuinely to rebut appellant's denials). The extraneous-offense indictments had no relevance apart from their tendency to show Scott's character as one who habitually abuses under-age children. *See Montgomery,* 810 S.W.2d at 387. "[T]his is precisely the inference that Rule 404(b) prohibits, because the probative value is deemed substantially outweighed by the danger of unfair prejudice as a matter of law." *Pavlacka,* 892 S.W.2d at 902 (citing *Montgomery,* 810 S.W.2d at 387). Such evidence is "inherently prejudicial" and, in this instance, was not admissible. *Montgomery,* 810 S.W.2d at 388. To pass over the admission of prejudicial and arguably inadmissible evidence may be strategic; to pass over the admission of prejudicial and clearly inadmissible evidence, as here, has no strategic value. *Ex parte Menchaca,* 854 S.W.2d 128, 132 (Tex.Crim.App.1993) (citing *Lyons v. McCotter,* 770 F.2d 529, 534 (5th Cir.1985)).

Counsel at first argued that he had not opened the door to testimony by the alleged victims. After the prosecutor suggested a hearing, the next event on the record is the discussion of the stipulation. Had counsel stood his ground, admission of the extraneous-offense evidence, had the court admitted it, would have been error. Instead, he agreed to stipulate to the most damaging form of extraneous-offense evidence—that of similar misconduct of a sexual nature.

Because I believe that trial counsel's performance was seriously deficient, I turn to the second prong of the *Strickland* test: can Scott affirmatively prove prejudice, *i.e.,* can he show a reasonable probability

that, but for his counsel's unprofessional errors, the result of the proceeding would have been different? *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

It is possible for a single egregious error of omission or commission to constitute ineffective assistance. *Thompson,* 9 S.W.3d at 813; *see, e.g., Ex parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.App.1991) (failure to challenge a void prior conviction used to enhance punishment rendered counsel ineffective); *Perrero v. State,* 990 S.W.2d 896, 899 (Tex.App.—El Paso 1999, pet. ref'd) (counsel's failure to properly prepare defendant for his testimony was both ineffective and extremely prejudicial); *Brown v. State,* 974 S.W.2d 289, 293 (Tex. App.—San Antonio 1998, pet. ref'd) ("We find no reasonable explanation for why defense counsel would open the door to this damaging extraneous evidence and aid in linking the evidence to the defendant.").

I cannot say that counsel's asking the question of Scott's grandson and agreeing to the stipulation seriously undermines confidence in the outcome of the case. Although the question led to the State's offer of extraneous-offense evidence, the stipulation was not more damaging than live testimony would have been. Even though (1) most of the State's numerous witnesses were impeached to some extent, (2) the State relied heavily on the testimony of the complainant whose credibility had been attacked by a showing that he had initially denied the events and had told Scott's grandson that the events had not occurred, and (3) the evidence was used forcefully in the State's final argument when the prosecutor told the jury that they heard about the two other offenses only because counsel "open[ed] the door for you to find out that there are other people who believe he does have the kind

of character that would do that … to young boys," I cannot say that exclusion of the extraneous-offense evidence would have yielded a different result in the proceeding. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Because I disagree with the way the majority has analyzed Scott's issues, I do not join the opinion, but concur in affirming the judgment.