IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-06-00400-CR

 

In re
Robert Whitfield

 

 



Original Proceeding

 

 



MEMORANDUM  Opinion










 

          Because there is no motion for DNA
testing dated December 6, 2003, in the record as alleged by Whitfield, his
petition for writ of mandamus is denied.

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

Petition
denied

Opinion
delivered and filed April 25, 2007

Do
not publish

[OT06]






t-family: 'CG Times', serif">O P I N I O N
                                                                                                                

      A jury convicted Willard A. Evans of the misdemeanor offense of criminal trespass. Evans
elected to have the court assess punishment, which was set at sixty days in the San Jacinto County
jail. On appeal, Evans raises four issues:
(1) The trial court erred when it denied his motion for directed verdict at the close of the
state’s case in chief;
(2) The trial court erred when it rendered judgment of conviction upon factually
insufficient evidence;
(3) Defense counsel rendered such ineffective assistance at trial that there is a reasonable
probability that the result was affected; and
(4) The trial court erred by failing to instruct the jury that extraneous offenses may not
be used as direct evidence of guilt.

We will affirm the judgment of the trial court.
BACKGROUND
      James Pickering and his wife, Dorothy lived on 7.5 acres in Cleveland, Texas. Around
midnight on September 20, 1999, they awoke to find that someone had entered their property. 
Dorothy testified that she saw Evans standing inside the detached garage that stands approximately
fifty feet from the back door of the house. According to Dorothy, when she called to Evans by
name, he approached the house. When she questioned him about being in the garage, he
responded first with a denial and then with a rambling story about being homeless. James testified
that he joined his wife at the back door of the house, that he also observed Evans out by the
garage, and that he went back inside to get a shotgun when Evans started toward the house. The
Pickerings both testified that Evans ran when James returned to the back door with the gun. 
      Both James and Dorothy testified that they knew Evans on sight. James testified that he had
known Evans for four or five years and that Evans lived on land adjacent to the Pickerings. The
Pickerings both stated that they had observed Evans walking down Pickering Road, which runs
in front of the Pickering home, on a regular basis prior to the incident. Dorothy also described
a subsequent conversation with Evans in which he urged her not to file charges against him. 
According to Dorothy, Evans never denied having been the person who was on her property that
night. James and Dorothy each stated that there was no doubt that Evans was the individual who
entered their property that night and that Evans did not have permission to be there.
       The Pickerings testified that there were two “no trespassing” signs on their property and that
these were clearly visible from Pickering Road. A neighbor confirmed that the Pickerings had the
signs posted prior to September of 1999. The defense, however, presented conflicting testimony
regarding the presence of the signs. A second neighbor stated that he did not recall seeing the
signs until March 2000, when he drove down the road at a walking pace. A postal worker, who
was in the area regularly, testified at first that she had not noticed the signs until after the evening
in question. On cross-examination, she admitted that one of the “no trespassing” signs had been
present and posted on the property prior to the incident. Both of these witnesses also confirmed
that Evans walked down Pickering Road frequently during 1999. The responding officer from the
San Jacinto County Sheriff’s Department testified that he failed to note in his original report
whether “no trespassing” signs were posted, but that he might have overlooked the signs because
of the darkness and the speed at which he drove down Pickering Road. Evans elected to testify
and stated that (1) neither sign was posted until about a week after the incident; (2) one of the signs
was posted prior to the incident; and (3) the second sign was posted in March of 2000. 
      Evans testified that he had been on the Pickering’s property five or six times in the past when
Dorothy asked him “to come get our potbellied pig off of their land.” Evans denied being on the
Pickering’s property on September 20, 1999, however. During direct examination by his counsel,
Evans also acknowledged having been convicted of one count of engaging in organized criminal
activity and seventeen counts of felony thefts approximately nine and a half years earlier.
      At the conclusion of the State’s case in chief, Evans moved for a directed verdict, claiming
that the State had not proved that Evans was on the property the night of September 20, 1999, that
the “no trespassing” signs were present at the time, or that Evans had the requisite mental state
to commit an intentional or knowing trespass as alleged in the information charging him with the
crime. The court denied the motion. After Evans was found guilty and sentenced, he
subsequently filed a motion for new trial, which was also denied without a hearing. 
SUFFICIENCY OF THE EVIDENCE
      In its criminal trespass case against Evans, the State was required to prove the following
elements: (1) Evans (2) without effective consent (3) entered or remained on the property or in a
building of another (4) knowingly, intentionally, or recklessly, (5) when he had notice that entry
was forbidden or received notice to depart and failed to do so. See Tex. Penal Code Ann. §
30.05; Johnson v. State, 665 S.W.2d 554, 556 (Tex. App.—Houston [1st Dist.] 1984, no pet.). 
“Notice” means “a sign or signs posted on the property or at the entrance to the building,
reasonably likely to come to the attention of intruders, indicating that entry is forbidden.” Tex.
Penal Code Ann. § 30.05(b)(1)(C).
Legal Sufficiency
      By contending that the trial court erred in denying his motion for directed verdict, Evans is
challenging the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d 479, 482 (Tex.
Crim. App. 1996). A "legal sufficiency of the evidence review does not involve any weighing of
favorable and non-favorable evidence." Margraves v. State, 34 S.W.3d 912, 917 (Tex. Crim.
App. 2000) (citing Cardenas v. State, 30 S.W.3d 384 (Tex. Crim. App. 2000)). Instead, a legal-sufficiency review calls upon the reviewing court to view the relevant evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Id. See also Jackson v. Virginia, 443
U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) (emphasis in original); Mason v. State, 905
S.W.2d 570, 574 (Tex. Crim. App. 1995).
      Viewing the evidence presented to the jury in the light most favorable to the verdict, we find
that a rational trier of fact could have found the essential elements of the offense of criminal
trespass beyond a reasonable doubt. The only two eye-witnesses to the offense identified Evans
as the person who entered the property on September 20, 1999. The Pickerings offered
uncontroverted testimony that the property belonged to them and that they had not given Evans
permission to be there. Evans indicated that he knew where the Pickerings lived because he had
been there before with their permission to retrieve his pig. There was no evidence that Evans was
mistaken about who owned that property. Finally, Evans testified that one of the “no trespassing”
signs was posted prior to September 20, 1999; he thus had notice that entry was forbidden
because the sign had come to his attention.
      We find that the evidence was legally sufficient to support the verdict. Thus, the court did
not err in denying the motion for directed verdict. We therefore overrule the first point of error.
Factual Sufficiency
      When conducting a review of the factual sufficiency of the evidence, we apply the standard
of review set out by the Court of Criminal Appeals in Johnson v. State, 23 S.W.3d 1 (Tex. Crim.
App. 2000). We ask “whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in
the [fact finder’s] determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.” Id. at 11; see also Cain v. State, 958 S.W.2d 404 (Tex. Crim.
App. 1997); Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996). The jury is the judge of
the credibility of the witnesses and may "believe all, some, or none of the testimony." Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). To find the evidence factually
insufficient to support a verdict, this Court must conclude that the jury’s finding is manifestly
unjust, shocks the conscience, or clearly demonstrates bias. Clewis, 922 S.W.2d at 135.
      Evans only claims that the evidence is factually insufficient to establish that the “no
trespassing” signs were actually in place at the time of the incident. The jury heard conflicting
testimony regarding the presence of the signs. Three witnesses, the Pickerings and one of their
neighbors, testified that the signs were present prior to the incident and were clearly visible from
the road. The record indicates that four other witnesses offered testimony that questioned the
presence of the signs. Evans and the postal worker initially claimed that no signs were present. 
However, both later admitted having observed one sign prior to the incident. Two witnesses
simply did not recall seeing the signs at that time. After reviewing the record, we cannot conclude
that the jury’s finding that Evans was guilty of criminal trespass was manifestly unjust, especially
in light of the testimony of Evans that one “no trespassing” sign was present prior to the incident.
      Thus, we find that the evidence was factually sufficient to support the verdict. Thus, we
overrule the second point of error.
INEFFECTIVE ASSISTANCE OF COUNSEL
      Evans complains that he was harmed by his counsel’s ineffective assistance at trial. We
disagree.
Standard of Review
      In assessing the effectiveness of counsel, whether in the guilt/innocence or punishment phase,
we apply the test set forth by the Supreme Court in Strickland v. Washington. Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Hernandez v.
State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); Ex parte Jarrett, 891 S.W.2d 935, 938
(Tex. Crim. App. 1994). Strickland requires us to determine whether:
      (1) counsel's performance was deficient; and if so,
      (2) whether there is a reasonable probability the results would have been different but for
counsel's deficient performance.
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. This two-pronged test is the benchmark for
judging whether counsel’s conduct so undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a reliable result. Thompson v. State, 9
S.W.3d 808, 812-813 (Tex. Crim. App. 1999). Absent both showings, we cannot conclude that
a defendant’s conviction resulted from a breakdown in the adversarial process that renders the
result unreliable. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Moreover, if a defendant fails
to prove the prejudice component (the second prong), the court need not address the question of
counsel’s performance. Boyd v. State, 811 S.W.2d 105 (Tex. Crim. App. 1991).
      "Consideration of the 'totality of the representation,' rather than isolated acts or omissions of
trial counsel, determines whether this standard has been met." Ex parte Kunkle, 852 S.W.2d 499,
505 (Tex. Crim. App. 1993) (quoting Ex parte Raborn, 658 S.W.2d 602, 605 (Tex. Crim. App.
1983)); accord Ferguson v. State, 639 S.W.2d 307, 310 (Tex. Crim. App. [Panel Op.] 1982). 
We strongly presume that counsel's conduct lies within the "wide range of reasonable
representation." McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Ineffective
assistance of counsel is not an allegation that should be made lightly. Estes v. State, 985 S.W.2d
684, 685 (Tex. App.—Fort Worth 1999, pet. ref’d). The appellant bears the burden of proving
by a preponderance of the evidence that counsel was ineffective. Thompson, 9 S.W.3d at 813.
      In some situations, a single egregious error or omission on counsel's part can be considered
ineffective assistance. Thompson, 9 S.W.3d at 813; Ex parte Felton, 815 S.W.2d 733, 735 (Tex.
Crim. App. 1991); Pena-Mota v. State, 986 S.W.2d 341, 344 (Tex. App.—Waco 1999, no pet.). 
Our scrutiny of counsel’s performance must be highly deferential, and every effort must be made
to eliminate the distorting effects of hindsight. See Strickland, 466 U.S. at 689, 104 S.Ct. at
2065; Thompson, 9 S.W.3d at 813. “Representation is not ineffective simply because, in
hindsight, the attorney could have or even should have done something differently.” Godwin v.
State, 899 S.W.2d 387, 392 (Tex. App.—Houston [14th Dist.] 1995, pet. ref’d). Allegations of
ineffective assistance of counsel must be firmly founded in the record. Thompson, 9 S.W.3d at
813.
Application
      Evans complains of two specific acts by his attorney. First, trial counsel called Evans to the
witness stand to testify only about matters that merely repeated the testimony of other witnesses,
knowing that Evans would be cross-examined about the eighteen felony offenses for which he had
been sentenced to prison. Secondly, counsel agreed to the text of the jury charge without asking
for a limiting instruction to ensure that the jury would not use the convictions as direct evidence
of guilt.
      We will first determine whether Evans was harmed as provided by the second prong of
Strickland. The burden of showing prejudice is upon Evans. Chambers v. State, 903 S.W.2d 21,
32 (Tex. Crim. App. 1995). In his brief, Evans contends that “[s]urely the jury was swayed by
the eighteen extraneous offenses, and improperly used them as direct evidence of guilt.” Evans
states that the State’s three references to these extraneous offenses in its closing argument
demonstrates the importance of the evidence to the State’s case. Without offering any further
evidence from the record, Evans concludes, “Sufficient harm is shown to require reversal.”
      Without considering the extraneous offenses, we have found that the evidence presented to
the jury was both legally and factually sufficient to find Evans guilty of criminal trespass. Because
sufficient evidence upon which to convict Evans would have existed even without the alleged
ineffectiveness, and no other reason for finding prejudice is alleged, we find that Evans has failed
to meet his burden. See Yzaguirre v. State, 957 S.W.2d 38 (Tex. Crim. App. 1997). Because
Evans has not proved the prejudice component, we will not address counsel’s performance.
      We overrule the third point of error presented by Evans.
THE JURY CHARGE
      Evans contends that the trial court was “duty-bound to prohibit the jury from using
extraneous offenses as direct evidence of guilt.” According to Evans, because he did not request
a limiting instruction, the court committed fundamental error by failing to provide such an
instruction sua sponte. We disagree.
       The Court of Criminal Appeals has held that when the defense first offers testimony relating
to prior convictions for purposes other than impeachment, the failure of the court to give a limiting
jury instruction on its own motion “would not appear to be error, much less fundamental error.” 
Bush v. State, 642 S.W.2d 787, 789 (Tex. Crim. App. 1982). The record reflects that defense
counsel initially broached the subject of prior convictions in his direct examination of Evans. 
Thus, because the trial court was not required to provide a limiting instruction on its own motion,
we do not find that the court committed error by omitting the instruction to the jury when Evans
failed to request it himself. Therefore, we overrule the fourth point of error.
CONCLUSION
 
      Having overruled all four points of error, we affirm the trial court’s judgment.
 
                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed on November 21, 2001
Do not publish
[CR25]