OPINION




No. 04-02-00516-CR



Dennis FISHER,


Appellant



v.



The STATE of Texas,


Appellee



From the 263rd Judicial District Court, Harris County, Texas


Trial Court No. 885944


Honorable Jim Wallace, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Sandee Bryan Marion, Justice

 

Delivered and Filed: August 27, 2003


AFFIRMED

 A jury convicted Dennis Fisher ("Fisher") of aggravated sexual assault of a child and the trial
court assessed punishment at life imprisonment. On appeal, Fisher complains that the trial court erred
in allowing the guardian of the complaining child to testify that the child was telling the truth. We
affirm.


Factual and Procedural Background

 In November 1998, Peggy Turner, an investigator for the Texas Department of Protective and
Regulatory Services received a referral that Alice (1) was living in a home with a suspected sex offender.
Turner interviewed Alice, then age six, at her elementary school, and during that interview, Alice
informed Turner that her uncle, Dennis Fisher, had abused her almost a year earlier. Alice also told
Turner that she had been abused by her brother Brian and her cousin Charles. The record indicates
that Brian and Charles were both six or seven at the time.

 At the May 2002 trial, the State called Alice, then ten years old, as its first witness. She
testified that in December of 1997, when she was five years old, her uncle Dennis Fisher visited the
home where she lived with her aunt. She stated that Fisher took her into the detached garage and
placed her on a set of tires. Fisher pulled her pants down, and then pulled his pants and underwear
down. Alice described her legs as being apart and Fisher putting his penis inside her. Alice testified
that Fisher moved his penis around inside her, then pulled up his pants, and pulled up her pants. Alice
testified that before they left the garage, Fisher instructed her to not tell anyone.

 The State also called Felicia Fisher, Alice's aunt and legal guardian. Felicia Fisher
corroborated Alice's testimony that Dennis Fisher visited their home in December of 1997. She gave
a description of the garage with burglar bars and a set of spare tires that matched the testimony given
by Alice. On cross-examination, defense counsel asked Felicia Fisher the following:

 Defense: Do you recall if there was even an investigation regarding Charles
sexually acting out with Alice?


 A: No, they didn't tell me that.


 Defense: Do you recall if there was ever an investigation with Brian sexually
acting out with Alice?


 A: Yes, they did.


 Defense: They never spoke to you about Charles acting out with Alice?


 A: No.


 Defense: Did Alice ever tell you that Charles had put his private part in Alice's
private part?


 A: No.


 Defense: Do you have an opinion as to whether or not that ever happened?


 A: No, I don't.


 Defense: Do you believe that it could have happened?


 A: It's possible.


During the State's redirect of Felicia Fisher, the following exchange took place:

 State: Ms. Fisher, you were asked a minute ago whether you believe Alice
about Brian. Do you believe Alice about what she said about your
brother Dennis?


 Defense: Your Honor, I object to speculation.


 Court: Don't answer.


 Defense: I also object to relevance, Your Honor.


 Court: I sustain the objection.


 State: Well, Ms. Fisher, let me ask it in a different way. From your other
than personal knowledge, have you ever had any reason to doubt what
Alice is saying.


 Defense: Your Honor, object to relevance.


 Court: It's overruled.


 A: No. I mean, I don't think Alice is lying.


 State: Pass the witness.


In his sole issue on appeal, Fisher challenges the trial court's admission of this testimony.


Standard of Review

 A trial court's decision to admit evidence is reviewed for an abuse of discretion. See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Therefore, this court will not
reverse the trial court's judgment unless its decision to admit the evidence complained of was
arbitrary or unreasonable. See Green v. State, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

Analysis 

 Fisher argues that this testimony bolstered Alice's credibility, and its admission was harmful
because the entire case turned upon her credibility. The State responds that the defense's opinion
questions to Felicia Fisher about Alice's allegations against Charles opened the door to opinion
questions about whether Alice told Felicia Fisher the truth about Dennis Fisher abusing her. For
authority, Fisher relies on Parr v. State, which applied the doctrine of optional completeness to permit
the admission of otherwise inadmissible evidence "to fully explain a matter opened up by the other
party." See Parr v. State, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977).

 It is generally improper for a witness to offer a direct opinion as to the truthfulness of another
witness. See Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). This type of testimony is
inadmissible "because it does more than 'assist the trier of fact to understand the evidence or to
determine a fact in issue;' it decides an issue for the jury." Yount v. State, 872 S.W.2d 706, 709 (Tex.
Crim. App. 1993), citing Duckett v. State, 797 S.W.2d 906, 914-15 (Tex. Crim. App. 1990)
(emphasis in original). It logically follows that a lay witness is not permitted to offer an opinion that
another witness is truthful. Arzaga v. State, 86 S.W.3d 767, 776 (Tex. App.--El Paso 2002, no pet.).
 One exception to this rule is found in the rule of optional completeness, which grants the
opposing side a right to reply and correct a false impression left with the jury. See Leday v. State,
983 S.W.2d 713, 716 (Tex. Crim. App. 1998). This rule guards against "the possibility of confusion,
distortion or false impression that could rise from the use of a portion of an act, writing, conversation,
declaration or transaction out of proper context." Livingston v. State, 739 S.W.2d 311, 331 (Tex.
Crim. App. 1987). "However, a party may not stray beyond the scope of the invitation." Schutz, 957
S.W.2d at 71.

 On cross-examination, defense counsel asked Felicia Fisher a series of speculative questions
about whether she believed that Alice could have been assaulted by Charles. These questions invited
the State to respond on redirect with other questions about Alice's allegations against Charles.
However, the State instead asked Felicia Fisher's opinion about Alice's allegations against Dennis
Fisher. This question exceeded the scope of the defense counsel's invitation to ask speculative or
opinion questions about whether Alice was telling the truth about Charles. See id. The trial court,
therefore, properly sustained defense counsel's objection to this question. The State then asked
Felicia Fisher a general opinion question about Alice's character for truthfulness. On appeal, Fisher
argues that this evidence is irrelevant and crossed the line between assisting the trier of fact and
deciding an issue for the jury. We disagree. Felicia Fisher knew Alice well enough to give a lay
opinion as to her character. See Schutz, 957 S.W.2d at 74 (in trial for sexual assault of a child,
question to complainant's mother about "whether the complainant was a truthful person was a valid
attempt to impeach the complainant's character through general opinion testimony"). The State's
question was proper. To the extent Fisher contends Felicia Fisher's answer to this question was
improper, he waived his complaint by failing to object to the non-responsive part of her answer.

 Even if the trial court had abused its discretion in admitting this testimony, we would hold that
error harmless beyond a reasonable doubt because it did not affect Fisher's substantial rights. See
King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A jury would have expected Felicia
Fisher, Alice's aunt and legal guardian who raised Alice as her own child for the six years prior to
trial, to testify that Alice was truthful. "A jury would expect a mother to testify that her son was
truthful, and would likely view such testimony with natural skepticism." Schutz v. State, 957 S.W.2d
at 72, citing Matter of G.M.P., 909 S.W.2d 198, 206 (Tex. App.--Houston [14th Dist.] 1995, no
pet.). Therefore, even if there were error in admitting this evidence, it would have been harmless.

 On appeal, Fisher argues that we cannot hold the admission of this statement harmless because
it affected Alice's credibility, the paramount issue in a case with no eyewitnesses. However, Alice
answered questions with more candor than many other witnesses in this case. She repeatedly
demonstrated her understanding of the difference between a lie and the truth, and the importance of
her promise to tell the truth. The truthful nature of Alice's allegation is strengthened by the testimony
of Dr. Terri Chadwick, a psychologist who evaluated Alice after her outcry. After interviewing Alice
and several members of her family, Chadwick diagnosed Alice as a victim of sexual and physical
abuse. Additionally, she believed that Alice suffered from post traumatic stress disorder and other
conditions relating to abuse from Brian and Charles. (2) Chadwick testified that Alice was having
problems at school, crying frequently, misbehaving, wetting her bed, and also wetting herself at
school. According to Chadwick, these complaints are all unusual for a typical seven year old, but
common for a victim of child sexual abuse.

 The State also called Dr. Margaret McNeese, a physician and the medical director of the
Children's Assessment Center Medical Clinic where Alice was examined following her outcry.
Although McNeese was not Alice's treating physician, she supervised Alice's treating pediatric nurse
practitioner and sexual abuse nurse examiner. McNeese reviewed the records created by the treating
nurse and testified that Alice reported that Dennis Fisher had sexually abused her. The medical
records indicated that Alice's vaginal tissue had torn and become scarred, and that she had a milky
white discharge with a foul odor. McNeese testified that these injuries were indicative of penetrating
trauma. She acknowledged the alleged abuse by Brian and Charles, but also stated that a six to seven
year old boy would not have the ability to cause such injuries with his penis.

 This evidence supports Alice's credibility. If the jury believed Alice's testimony, then Felicia
Fisher's testimony that Alice was telling the truth would likely have a minimal effect on the jury. We
have considered the record as a whole, including the testimony and physical evidence admitted for
the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged
error, and how it might have been considered in connection with other evidence in the case. See
Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We further note that even if the trial
court had erred in admitting Felicia Fisher's non-responsive answer, there was no effect on Fisher's
substantial rights. We therefore affirm the judgment of the trial court.


 Catherine Stone, Justice


Publish
1. All children in this case have been given pseudonyms.
2. Chadwick also testified that the behavior of "sexually acting out" on the part of Brian and Charles was likely
a symptom of their own physical and sexual abuse.